## FELL v. NORTHERN PAC. R. Co.

*(Circuit Court, D. North Dakota. November 19, 1890.)*

1. TORTS OF SERVANT—EXEMPLARY DAMAGES.

Exemplary damages may be awarded against a master, though the wrong complained of was the act of his servant, not authorized nor ratified by him.

2. CARRIERS—EJECTION OF PASSENGER—DAMAGES.

The plaintiff bought a ticket, and was told by the agent that he could ride on a particular train. The conductor had not been informed of the order to carry, and ejected the plaintiff on a dark night, while the train was running at a dangerous rate of speed. *Held,* that the case was a proper one for exemplary damages.

3. SAME—EVIDENCE OF INJURIES.

The plaintiff having been forced by threats to jump from the train while it was running rapidly on a dark night, evidence is admissible that he was at the time afflicted with a rupture, though it was unknown to the conductor, and did not aggravate the injury sustained; the evidence being competent for the purpose of ascertaining the extent of his mental suffering as an element of damages.

4. SAME—DAMAGES.

    The plaintiff suffered pain in one of his legs, caused by the fall, and felt faint, and had some difficulty in walking back to the station. The pain continued more or less for three weeks, during which he did no work. He suffered no permanent injury, and did not call a physician. He was delayed 12 hours in his journey. *Held,* that a verdict for $600 damages should not be disturbed.

5. SAME—INSTRUCTIONS.

    In such case, there is no error in refusing an instruction to find for the defendant if the conductor told the plaintiff, before the train started, that he could not ride on it, and the latter refused to get off, and was afterwards expelled without unnecessary force; the instruction assuming that the expulsion was at a proper time and place, and there being evidence to the contrary.

At Law.   On motion for a new trial.

*S. L. Glaspell,* for plaintiff.

*John S. Watson,* for defendant.

THOMAS, J.   This is an action for personal injuries, alleged to have been sustained by the plaintiff by reason of being expelled from defendant's freight train. The action was tried by a jury, before Judge ROSE, at Jamestown, in the district court in and for the sixth judicial district of the territory of Dakota, at the April term of that court, 1889. The plaintiff had a verdict for $600. A motion for a new trial was made by the defendant in said territorial court, which was pending at the time the state of North Dakota, including all of said sixth judicial district, was admitted into the Union. The judge of the trial court settled a bill of exceptions. Upon the admission of said state, this action was transferred to this court upon the request of the defendant, pursuant to section 23, c. 180, Laws 1889, (25 St. at Large, pp. 676–683.) On the 8th day of October, 1890, said motion was brought on to be heard before this court, sitting at Fargo, in the south-eastern division of the district. It appears from the bill of exceptions that on the evening of the 26th day of July, 1888, the plaintiff applied to the defendant's ticket agent at Eldridge station, on defendant's line of road, in the territory of Dakota, for a ticket to ride on freight train No. 16, from that station to Jamestown, a station a few miles east of Eldridge, and also on the line of its road. Said freight train was due at Eldridge at 11:40 that evening. Prior to that day said train was not allowed to carry passengers. The ticket agent, in answer to said application, told the plaintiff that he would sell him a ticket for passage on train No. 16, as requested, and at the same time showed plaintiff an order of the company permitting passengers to ride on that train, which had been issued that day; and the plaintiff then and there purchased of said agent a first-class ticket for passage on said freight train No. 16 from Eldridge to Jamestown, aforesaid, and paid therefor 30 cents, the regular price. Said freight train was run in two sections on that evening. The agent flagged the first section, and after it had stopped the plaintiff showed the conductor thereof his ticket, and the ticket agent told the conductor that he had orders to sell tickets for that train, and showed the conductor thereof the order. The conductor thereupon told the plaintiff, as he claims, that the first section did not carry passengers, but that the second section

would carry passengers. The plaintiff did not attempt to get onto the caboose of the first section. In this respect the conductor of the first section and the brakeman testify that the plaintiff did get onto the caboose of the first section, and, when told that he could not ride thereon, the plaintiff got out and walked back to the station. The conductor also denies telling him that he could ride on the second section. The ticket agent then flagged the second section, as it came up about five minutes after the first section had passed, and the plaintiff, as he claims, at once walked back to the caboose attached to the second section, then standing some distance west of the station. As he walked up to the caboose, some one called out therefrom: "What do you want?" Plaintiff replied that he wanted to ride to Jamestown, and thereupon stepped upon the platform of the caboose, and found the door locked. The train started while plaintiff was standing upon the platform, and was in motion when the conductor opened the door of the caboose. The plaintiff passed into the caboose when the door was opened, and showed the conductor his ticket, and the conductor thereupon said: "That ticket is not good on this train. You will have to get off." The plaintiff then told the conductor that he had bought that ticket to ride on that train, and that he was told by the agent that it was good on that train. The conductor then said to plaintiff: "By God, you must get off this train; you have got to get off this train." Plaintiff then turned around and picked up his carpenter tools, which he had laid on the seat, and started towards the door, and said to the conductor: "I can't get off this train." The conductor thereupon said: "By God, you've got to get off." By that time plaintiff was out on the platform, and saw that the train was running very fast, and again told the conductor that he could not get off, and the conductor said: "By God, you have got to get off, and if you don't, I will help you off." The plaintiff then stepped down onto the lower step of the platform. The conductor followed him there, and put his hand on plaintiff's shoulder, and said: "If you don't get off, I will throw you off." Plaintiff said: "Don't throw or push me off, I had rather jump." The plaintiff thereupon jumped off and struck on his feet, and then fell on his head and shoulders. Plaintiff had in his arms and pockets a saw, plane, hammer, and other tools at the time he jumped from the train. The train was in motion, and running very fast, as plaintiff claims, and was at that time about 800 feet from the place where plaintiff got onto the caboose, and it was quite dark at the time. The plaintiff picked up his tools, and walked back to the ticket office with some difficulty, and remained at the hotel near the ticket office until the next morning. Plaintiff suffered pain in one of his legs in the fall, and felt faint, and had some difficulty in walking back to the station. The pain continued more or less for three weeks, during which time he did no work. He suffered no permanent injury, and did not call a physician. He was delayed about 12 hours at Eldridge. The conductor and officials of the train give a somewhat different version of this affair. The defendant gave evidence tending to show that the conductor of the second section notified the plaintiff that he could not ride

on No. 16 just before the train started up. In this respect the conductor testified:

"I was in the cupola, and I thought he was a railroad employe at first, and I stepped down and asked him what he had to ride on, and he showed me a ticket. I don't remember whether I took the ticket in my hand or not, and I told him we did not carry passengers, and he tried to explain to me that we did, and while I was talking to him we started up."

Defendant also gave evidence tending to show that the conductor of the first section told plaintiff that he could not ride on the second section. Neither conductor had been notified, prior to arriving at Eldridge, of the new order.

The defendant contends that the court erred in refusing to give certain instructions, based on the evidence given on defendant's behalf, to the effect that plaintiff was notified, prior to the starting of the train, that he could not ride on it. After a careful examination of the evidence and the instructions asked and refused, I am of the opinion that none of the instructions refused distinctly raise the point suggested. They all assume some material fact neither admitted nor proved, which warranted the rejection by the trial court of the instructions. The following will illustrate them:

"(2) If you believe from the evidence that the plaintiff was advised or informed by the conductor before the train left the station at Eldridge that he, the plaintiff, would not be allowed to ride on the said train, and that the plaintiff neglected or refused to leave the train, and was afterwards expelled by the conductor without unnecessary force or violence, then your verdict must be for the defendant. (3) If you find from the evidence that the plaintiff purchased from the defendant's ticket agent at Eldridge a ticket which entitled him, plaintiff, to transportation from said station to Jamestown, and that said ticket agent advised him, plaintiff, that he could ride upon the freight train then about to arrive at said station, and that plaintiff, pursuant to said advice, thereupon mounted the caboose attached to said freight train, and if you shall also find that if, before said freight train started from Eldridge station, the conductor, or any other agent or servant of the defendant, advised or informed the plaintiff that he would not be allowed to ride upon said train, then the plaintiff had no right to rely upon the information given by the ticket agent; and if he chose, under such circumstances, so to do, and was afterwards expelled from the train without unnecessary force or violence, he cannot recover in this action."

The first instruction above quoted assumes that the undisputed evidence clearly shows that the plaintiff was expelled from the train at a proper time and place. The giving of this instruction would evidently warrant the jury to find for the defendant, although it appeared from the evidence that the plaintiff was ejected while the train was running at a dangerous rate of speed for him to jump, and at a dangerous place, and in a dark night. The second instruction in effect required the court to charge the jury that, although the plaintiff had bought his ticket upon the assurance of the ticket agent that he could ride on that train, and had paid his money therefor, relying on such assurance as a part of his contract, if any other servant of the company had informed him that he could not ride on that train before he entered the car, the conductor

would be justified in ejecting him. Such a proposition cannot be maintained. The only evidence contained in the bill of exceptions tending to show that any agent or servant of the company except the conductor of the second section informed the plaintiff that he could not ride on the second section was the evidence to the effect that the conductor of the first section had so informed him. This conductor had seen plaintiff's ticket, and had been told by the ticket agent that an order had been issued permitting passengers to ride on No. 16, and the order was shown to that conductor. He was in possession of all the facts, and had no right to refuse plaintiff admission to his car, and had no right to prevent plaintiff from taking passage on the second section, over which he does not appear to have had any control, and notice from him to the plaintiff, under the circumstances disclosed by the evidence, would not justify the second conductor in excluding him from his car; at least that evidence would not justify the court in giving the instructions above quoted, or either of them.

The defendant also contends that the court erred in refusing to instruct the jury that, under the evidence introduced, the plaintiff was not entitled to recover exemplary damages, and in instructing them that they might allow such damages in case they found that the conductor expelled plaintiff from the train in a wanton, gross, malicious, and outrageous manner. At the time of the trial of this action, the following section of our Civil Code was in force in the territory of Dakota, and is now the law of this state:

Sec. 1946, Civil Code. "In any action for the breach of an obligation not arising from contract, where the defendant has been guilty of oppression, fraud, or malice, actual or presumed, the jury, in addition to the actual damages, may give damages for the sake of example, and by way of punishing the defendant."

Whatever conflict existed prior to the adoption of this statute on the question of exemplary damages, the rule that they may be allowed in cases coming within the terms of this statute is settled in this state, and such was the rule applicable to proper cases when this case was tried in the territorial court. And that the rule is applicable to corporations in cases where there has been some willful misconduct, or that entire want of care which raises the presumption of a conscious indifference to consequences, is settled by the supreme court of the United States in *Railway Co.* v. *Arms,* 91 U. S. 489–495. These rules are not questioned in this case, but the contention is that the act complained of must have been that of the principal, and not of the mere agent or servant. It is insisted that that fact must be shown, or it must appear that the act of the servant was authorized or ratified by the principal. The rule contended for by defendant's counsel has been laid down in a great number of decided cases, but the rule has been criticised and abandoned in other cases. There was evidence in this case from which the jury were justified in finding that there was willful misconduct on the part of the conductor in ejecting plaintiff from the train, and that he manifested a reckless indifference to the rights of the plaintiff, and the consequences that

might result to him in ejecting him from the platform of the car while the train was moving rapidly, and in a dark night, knowing not how or where he would strike or fall. He was in the employ of the defendant, and in charge of its train, and was acting within the scope of his authority. The defendant's employment afforded the conductor the means or opportunity, which he used, while so employed, in committing a willful injury, and his willful misconduct must be attributable to the company for which he acted, though it did not authorize the wrongful act or ratify it. Upon the facts and circumstances of this case, I think the learned judge was justified in instructing the jury that they were at liberty to allow exemplary damages. Id. 489; *Gallena* v. *Railroad Co.*, 13 Fed. Rep. 117–124; *Barry* v. *Edmunds*, 116 U. S. 550–563, 6 Sup. Ct. Rep. 501; *Malloy* v. *Bennett*, 15 Fed. Rep. 371–374; *Shumacher* v. *Railroad Co.*, 39 Fed. Rep. 175; *Manufacturing Co.* v. *Boyce*, 13 Pac. Rep. 609, and cases cited on page 610.

The next alleged error relates to the admission of evidence as to the plaintiff's physical condition at the time he was ejected from the car. The following question was propounded to the plaintiff by his attorney in his examination in chief: "You may state whether or not at the time of this occurrence you were suffering from any serious bodily infirmity." This question was objected to as incompetent, irrelevant, and immaterial, and inadmissible under the pleadings, and for the further reason that it had not been shown that such disability, if any there existed, was known to the defendant or any of its servants. The objection was overruled, and the evidence admitted as going to the point of his mental suffering occasioned by the threat to put him off, and fearing the consequences of his jumping and alighting from the train. To this ruling the defendant excepted. The plaintiff then testified that he had been afflicted with a rupture since the spring of 1864; that it is of a very serious nature; that it interfered with his work; that he was unable to wear a truss; unusual exertion has an effect on the malady,—the more exertion the more irritation; that he was not able to perform the ordinary work of a carpenter; that he could not jump from the train because he was in fear of being hurt; but that he did jump for the reason that he had rather jump than be pushed off. The rupture did not contribute to his inability to work during the three weeks. It was not aggravated or in any way irritated by the jumping from the train on that occasion. I think the evidence was competent for the purpose for which it was admitted. The mental anguish arising from the nature or character of the wrong is a proper element of compensatory damages. *McKinley* v. *Railroad Co.*, 44 Iowa, 314. The conductor put the plaintiff in fear by compelling him to accept the alternative of jumping from the platform or being pushed off in the dark, while the train was moving very fast, as it appeared to the plaintiff, and his fear must naturally have been greatly intensified by reason of his physical condition, and it was proper to put the jury in possession of all the facts relating to his physical condition, for the purpose of ascertaining the extent of his mental suffering as an element of damage. *Railway Co.* v. *Fixe*, 11 Amer. & Eng. R. Cas.

109. That the conductor did not know of the rupture is immaterial. The plaintiff was rightfully on that train, and had a legal right to be carried according to his contract, without interference, so long as he conducted himself in a proper manner; and when the defendant, through its conductor, trespassed upon his rights, and expelled him from the train, as shown by plaintiff's testimony, to which the jury had a right to give credit, it became liable for the natural and legitimate consequences of the willful and unlawful act. If the plaintiff had sustained physical injury by reason of the ejection, which became seriously aggravated by reason of the rupture, the defendant could not claim immunity for the aggravated result because it did not know of the physical condition of the plaintiff. *Railway Co.* v. *Buck*, 18 Amer. & Eng. R. Cas. 234. Upon principle the same rule must apply in a case like this, where the mental injury and anguish was intensified and aggravated by the physical condition, though not known to the party guilty of willful wrong.

It is also claimed. that the court erred in admitting the evidence of the surgeon, who testified under objection, that he had some two years prior to the trial examined the plaintiff, and found that he was then suffering from a permanent rupture, which would interfere with physical exercise on the part of the plaintiff; that it would interfere with physical exertion in the manner and to the extent that it was liable to produce strangulated hernia, and the consequences following might reach considerable ways. This evidence was practically corroborative of the testimony of the plaintiff on the same point. It is evident that it would or might require great physical exertion in jumping from that moving train at the time and place, or in the shock resulting from the jump or fall to the ground. I see no objection to the testimony. The case of *Hubbard* v. *Railroad Co.*, (Mich.) 18 Amer. & Eng. R. Cas. 338, cited by defendant, is not in point, and does not sustain the objection to the testimony.of the surgeon.

The last point made and urged by the defendant in this motion is that the verdict should be set aside for the reason that the damages are excessive. Upon the well-settled rules for the guidance of courts on this question, I do not think I would be justified in setting this verdict aside on that ground. I cannot see that this verdict is so excessive or outrageous with reference to all the circumstances of the case as to demonstrate that the jury have acted against the rules of law, or have suffered their passions, their prejudices, or their perverse disregard of justice to misdirect them. *Barry* v. *Edmunds*, 116 U. S. 565, 6 Sup. Ct. Rep. 501; *Railroad Co.* v. *Fixe*, 11 Amer. & Eng. R. Cas. 109; *Railroad Co.* v. *Myrtle*, 51 Ind. 566.

The case was fairly submitted to the jury, and, finding no error, the motion for a new trial is denied, and judgment for the plaintiff is ordered accordingly.