BUD BAILEY v. STATE OF MISSISSIPPI.

[48 South. 227.]

1. CRIMINAL LAW AND PROCEDURE. *New trial. Newly discovered evi-
    dence. Impeaching testimony.*

    A new trial will not be granted for newly discovered evidence im-
    peaching a witness for the state.

2. SAME. *Evidence. Self-serving. Homicide. Flight. Failing to es-
    cape having opportunity.*

    Proof that while awaiting trial defendant had opportunity to es-
    cape but refrained and warned an officer of the escape of a fel-
    low prisoner is self-serving and inadmissible, although the state
    has offered evidence of defendant's flight immediately after the
    homicide.

FROM the circuit court of Monroe county.

HON. EUGENE O. SYKES, Judge.

Bailey, appellant, was indicted and tried for the murder of
one George James, was convicted of manslaughter, sentenced to
the penitentiary and appealed to the supreme court. In view
of the opinion of the court a statement of the facts is unneces-
sary.

*Leftwich & Tubb,* for appellant.

Great stress was laid by the state on appellant's supposed flight. It was shown, however, that he only stayed out of the way of the officers until court met, which was less than a month, because he felt that he could not make bond and employ a lawyer; the second day of court, while the grand jury was in session, he surrendered himself for trial. The foundation stone of introducing the flight as competent evidence in prosecution for crime is that it shows conscious guilt in the breast of the accused. Such evidence is competent and may mean much or it may mean nothing. It is of dubious and ambiguous character, and every circumstance that might explain the conduct of the accused ought to be heard by the court and submitted to the jury. Exculpatory facts are admissible to show consciousness of innocence. So eminent an authority as Prof. Wigmore fully agrees with our position on this point. Wigmore on Evidence, sec. 276. Sheriff Jones was placed on the stand to show defendant's flight, but on cross-examination was not allowed to testify that while appellant was in jail awaiting the action of the grand jury, two other prisoners sawed their way out and escaped, and that appellant hastened to the court-house and disclosed the fact to the sheriff, giving him first information of their leaving. Certainly the jury should have been informed that the prisoner after he had surrendered to the authorities had a chance to escape and refused to do so. If such evidence does not show consciousness of innocence and willingness and a gladness to confront a jury of his countrymen and stand his trial, we are mistaken as to what evidence means. We trust this court will take its stand with Wigmore, the greatest living authority on questions of this sort, which is certainly in line with enlightened jurisprudence.

Error was committed by the court below in refusing to grant a new trial on the newly discovered evidence shown at the hearing of the motion for a new trial. This we say, being mindful of the rule that mere cumulative evidence is not ground for a new trial, but the newly discovered evidence is not cumulative. It

destroys absolutely the evidence of the state's star witness, and if had at that time it would, as far as human prescience can go, have resulted in an acquittal.    As sustaining our contention we cite a very recent case of this court, to-wit: *Bates v. State,* 32 South. 915.

*George Butler,* assistant attorney-general, for appellee.

It is first earnestly insisted that it was fatal error for the court below to exclude proferred testimony of appellant's opportunity and failure to escape jail after it had been shown that he evaded arrest and finally surrendered to the officers.

It, of course, was competent to prove as a circumstance against accused that he evaded arrest, and the correctness of this rule is conceded by counsel.

Of course, the accused might introduce evidence to destroy the significance of his flight and that his flight was due to some other cause than a consciousness of guilt and upon this theory the testimony relative to defendant's financial standing and inability to make bond and procure counsel, was admitted.    But we deny the proposition that some twenty or thirty days after the commission of the homicide, after having fled from arrest, after having voluntarily surrendered himself to the officers, after having been confined in the jail for several days, that it was proper to introduce testimony showing his failure to flee when the opportunity offered.    This would be a violation of the well-known and universally established rule of the incompetency of self-serving declarations.    The Wigmore doctrine has been expressly repudiated by this court in a great number of cases—larceny cases, the latest expression being *Lohrey v. Staye,* 45 South. 145.

It does not appear that the newly discovered testimony could not have been discovered by reasonable diligence before the trial; and the general rule is that a new trial will not be granted on the ground of newly discovered testimony, the only effect of which would be to impeach the credibility of the witnesses.

Fletcher, J., delivered the opinion of the court.

We cannot reverse this case on account of the court's action in refusing to set aside the verdict on the ground of newly discovered evidence. Such evidence tended only to impeach the evidence of the witness McLendon, by no means the only, or indeed the strongest, witness for the state. The rule is well established that a new trial will not be granted on the ground of newly discovered evidence, the only effect of which is to impeach the credibility of a witness. *Moore v. Chicago, etc., R. R. Co.,* 59 Miss. 243.

The only other question seriously pressed is that the court erred in refusing to admit evidence to show that the defendant had an opportunity to escape from prison, and not only declined to do so, but actually warned the sheriff of the escape of a fellow prisoner. This testimony was offered after the state had proven the flight of the prisoner immediately following the homicide. It should be stated that the defendant was permitted to explain this flight fully, and that the evidence excluded related to a matter which transpired some time after the defendant had surrendered, and was entirely distinct and independent of the first occurrence. It is argued, and the argument is sustained by the great authority of Prof. Wigmore, that, since the state is permitted to prove flight as showing a "consciousness of guilt," the defendant should be permitted to prove a refusal to escape when opportunity offers as showing a "consciousness of innocence." 1 Wigmore on Evidence, 293. The learned textwriter, however, concedes that this view is opposed to the great weight of authority, and with that candor which is one of the chief qualities of his great intellect appends in the note a list of cases which utterly repudiate and reject his conclusion.

In this instance the majority of the court prefers the reasoning and conclusions of these cases, rather than the conclusion reached by the author. This is not wholly because of the number and distinction of the courts so holding, but because we think the rule rejecting such testimony is correct on principle. If a

declaration against interest is admitted, while a self-serving declaration is rejected, why should it not be true that conduct showing guilt is admissible, while conduct alleged to show the opposite is rejected? Nothing can be better settled than that a litigant cannot manufacture testimony in his own behalf. This is but a form of this familiar principle. If the rule announced by Wigmore is correct, a prisoner who deliberately refuses to escape is but availing himself of the opportunity to manufacture testimony. for himself—a thing which can never be permitted. Testimony as to a damaging admission made by a prisoner on trial is admitted manifestly because it shows a consciousness of guilt; but it will never be contended that the same prisoner can proclaim his innocence and have the benefit of such declaration on the trial as showing a "consciousness of innocence." And yet in the opinion of the majority of the court there can be no logical distinction between acts and words in this connection.

Chief Justice WHITFIELD, while differing from the majority on this point, and agreeing with Wigmore's announcement of the rule, does not regard such evidence as of high value one way or the other, and therefore concurs in the result, since, as he thinks, the guilt of the defendant is manifest and the result could not possibly have been affected by this error of the court.

<em>Affirmed.</em>