## Ennis v. Yazoo & M. V. R. Co.

### [79 South. 73, Division A.]

1. MASTER AND SERVANT. *Wrongful death of servant. Punitive damages.*

   Where an employee in a railroad shop was electrocuted while holding a defective electric light attached to a cord, and it was shown that the light was defective and had been for at least a week, and that it had shocked another employee six or eight different times, and that the dangerous condition had been reported to the officers in charge of the work and employees in the shop, and that they, notwithstanding this notice, continued to negligently and wantonly furnish the dangerous and defective electric apparatus to the employees until the death of deceased was brought about by its use, in such case, it was not error to instruct that punitive damages might be allowed.

2. NEW TRIAL. *Grounds. Newly discovered evidence.*

   The settled law in this state with reference to the granting of new trials on newly discovered evidence, is that when the newly discovered evidence merely goes to discredit or impeach an adverse witness who testified in the trial, it is not, as a general rule, good ground for a new trial, as the only effect of such evidence would be to contradict or impeach the credibility of such witness.

3. NEW TRIAL. *Grounds. Surprise.*

   Surprise because of the adverse party's evidence is not good ground for granting a new trial.

APPEAL from the circuit court of. Amite county.

Hon. R. E. JACKSON, Judge.

Suit by Mrs. E. A. Ennis administratrix of the estate of John W. Ennis, deceased against the Yazoo & Mississippi Valley Railroad Company. From a judgment for plaintiff on a second trial and a denial of her motion for a new trial, and from the judgment setting aside the verdict on the first trial, plaintiff appeals.

The facts are fully stated in the opinion of the court.

*A. H. Longino* and *Robt. B. Ricketts,* for appellant.

*Robt. B. Mayes, Chas. N. Burch* and *H. D. Minor,* for appellee.

HOLDEN, J., delivered the opinion of the court.

The appellant, Mrs. E. A. Ennis, administratrix of the estate of her deceased son, John W. Ennis, filed suit and recovered judgment against the appellee railway company for the sum of thirteen thousand dollars as damages for the death of her son, alleged to have been caused by the negligence of the appellee in furnishing a defective and dangerous electric wire appliance to the deceased for use in his employment, which shocked him to death. The verdict and judgment for thirteen thousand dollars on motion for a new trial, was set aside, and a new trial granted the defendant railroad in the lower court. On the second trial of the case the plaintiff below recovered damages in the sum of five thousand dollars, whereupon she moved the court to set aside this verdict and grant a new trial because the court had erroneously limited the measure of damages to an amount recoverable under the federal Employers' Liability Act (Act Cong. April 22, 1908, chapter 149, 35 Stat. 65 [U.˙ S. Comp. St. 1916, sections 8657-8665]), and from a judgment overruling this motion for a new trial, and from the judgment setting aside the former verdict of thirteen thousand dollars and granting a new trial to defendant, plaintiff below appeals here.

The appeal presents two questions for our decision: First, whether or not the lower court erred in setting aside the first verdict for thirteen thousand dollars and granting a new trial to the defendant railroad company, or, in other words, whether this court should now reinstate the former verdict and judgment for thirteen thousand dollars in favor of the appellant; second,

that if the court below was correct in setting aside the thirteen thousand dollar verdict and granting a new trial to appellee railroad company, then whether or not the lower court erred in limiting the recovery of damages in the second trial to the measure provided by the federal Employers' Liability Act.

The verdict and judgment in the first trial was based upon and mainly supported by the testimony of one witness named Boswell, who testified for the plaintiff that he was employed in the shops of the appellee railroad in Vicksburg at the time and where the deceased John Ennis met his death; that young Ennis was employed as a boiler maker's helper in the shops, and at the time he came to his death was assisting one Mr. Desmond, a boiler maker, repair the inside of a fire box of a locomotive by putting certain bolts therein; that he was holding in his hand an electric light connected by an extension cord furnished by the appellee, and was holding this light in such a way that the boiler maker could see how to do his work in the fire box. The light was attached to a long cord, and the glass bulb was covered by a wire guard over it; that this guard on the lamp was defective and out of order, and would slip and come in contact with the electrically charged part of the lamp; that, while the deceased, Ennis, was thus engaged in the duties of his employment in holding the light for the boiler maker, he suddenly fell down on the deck of the engine or tank, where he was standing, and exclaimed, "My God, the light's got me!" and died within a few minutes thereafter, still clinging to the electric cord and light. The witness Boswell testified at length that he worked near by and had used this particular light and cord on several occasions previously, and that he had been electrically shocked while using it as many as six or eight different times, which, he said, was on account of the defective condition of the cord and light, and that he had several times within the previous week reported

the dangerous and defective condition of this electric appliance to the boiler maker, Desmond, and also to the foreman, Detrick, who was in charge of the shop, and asked the foreman, who was a superior officer over the employees, to have this particular light repaired or replaced with a safe one, but that the foreman, notwithstanding this notice, continued to furnish the unsafe appliance to the employees until it caused the death of young Ennis, whereupon the railroad company then replaced the unsafe appliance by furnishing a new one. There is other testimony in the record tending to show that the cord and light used by the deceased, Ennis, was in a defective condition, and that it carried a voltage of sufficient strength under certain conditions to cause the death of a person. It appears from the record that at the time of the shock and death of the deceased, Ennis, the employees who gathered around his body were of the opinion that he met his death by electrocution from the electric light and cord. No other cause of death appeared to any one. The superintendent of the railroad telegraphed to the mother of the deceased that her son had been accidentally killed. The regular physician of the railroad company certified that his death was caused by electrocution, although he said that he could find no burns on the body. The railroad company made no attempt to show by testimony that the deceased came to his death from any natural cause or any other cause, but relied for its defense upon the failure of the plaintiff to show that the death was caused by an electric shock, and offered proof that the appliance was not defective, and that the electric voltage was insufficient to cause death. There was a conflict in the evidence. At the conclusion of the testimony on both sides the court granted the plaintiff an instruction to the jury, authorizing them, in their discretion, to find punitive damages, as well as actual damages, for the plaintiff.

There was a verdict of thirteen thousand dollars for plaintiff. The defendant railroad company filed its motion for a new trial on the ground of newly discovered evidence, and on the hearing of this motion introduced testimony of several witnesses, in the form of affidavits and otherwise, which, in substance, went to contradict and impeach the testimony of witness Boswell, given for plaintiff in the trial of the case. This testimony offered by the railroad on the motion for a new trial tended to show that Boswell was not present at the time the deceased, Ennis, met his death, but came up afterwards from another part of the shop building; that Boswell had stated at the time that he knew nothing about the case.

All of this testimony amounted to nothing more than a contradiction of Boswell or the impeachment of his credibility. Upon this testimony contradicting and impeaching the witness Boswell, the lower court set aside the verdict and judgment of thirteen thousand dollars and granted a new trial to the defendant railroad company; and the appellant, Mrs. Ennis, the administratrix, urges here that this action of the lower court was erroneous, and contends that the former judgment should be reinstated. The appellee railroad company contends that the lower court was correct in setting aside the verdict and granting a new trial on the newly discovered evidence, and also because it was error in the lower court to have granted an instruction to the plaintiff permitting recovery of punitive damages, and that, while the judgment of the lower court in sustaining the motion for a new trial states that its action is based upon newly discovered evidence, still that if that is a wrong reason given, the motion was properly sustained on account of the erroneous punitive damage instruction given the plaintiff.

We will first discuss the question as to whether the instruction for punitive damages granted the plaintiff was erroneous. The record discloses abundant proof, in

the testimony of Boswell, that the electric appliance was defective, and had been dangerous and defective for at least a week; it had shocked the witness Boswell six or eight different times; that he had reported the dangerous and defective condition of the appliance to Desmond and Detrick, both of whom were superior officers in charge of the work and employees in the shop; and that they had, notwithstanding this notice, continued to negligently and wantonly furnish the dangerous and defective electric apparatus to the employees until the death of Ennis was brought about by its use. So, we do not think the court erred in granting the instruction on punitive damages.

Our understanding of the settled law in this state with reference to the granting of new trials on newly discovered evidence is that when the newly discovered evidence merely goes to discredit or impeach an adverse witness who testified in the trial, it is not, as a general rule, good ground for a new trial, as the only effect of such evidence would be to contradict or impeach the credibility of the witness, and such testimony may be discovered in almost every case; and if it warranted the granting of a new trial by the judge, even though he believed it to be true, would cause no end to litigation. In the cases of *Vanderburg* v. *Campbell*, 64 Miss. 89, 8 So. 206, *Moore* v. *Railroad Co.*, 59 Miss. 243, and Bailey v. State, 94 Miss. 863, 48 So. 227, 20 L. R. A. (N. S.) 409, the leading cases in this state on that subject, the rule is clearly announced that a new trial will not be granted on the ground of newly discovered testimony, the only effect of which would be to impeach the credibility of a witness. 20 R. C. L. 294.

It is unnecessary for us to discuss the soundness of this rule so well established in our state and elsewhere, but we venture to say that it must be obvious to all that to grant a new trial merely upon impeaching testimony would tend to prevent an end to litigation.

As we view it, this question, arising under a motion for a new trial in such cases, is not to be left to the mere discretion of the trial judge. It is not a discretionary matter for the trial judge to pass upon, but the definite rule of law is that no new trial will be granted on this character of newly discovered evidence. To hold that the matter was within the mere discreation of the trial judge would be to authorize the judge, in a certain measure, to pass upon the truth of the testimony and the credibility of the witness, resulting in delayed justice. This function is exclusively for the jury under our system of jurisprudence. This, we may say, is the general rule in this state, but rare cases of palpable injustice, not like the one before us, might arise, justifying an exception to this general rule. The record in this case tends to demonstrate the soundness and peculiar applicability of the rule here. It will be observed that on the second trial of this case there was a verdict for the plaintiff based upon the testimony of this same witness Boswell, who was confronted and contradicted at the second trial by the numerous witnesses of the appellee railroad company, but the jury. nevertheless, believed his testimony, and found for the plaintiff, as did the jury in the former trial.

There is no legal merit in the contention of appellee railroad company that plaintiff's evidence was a surprise to it. It is often so, in such cases, but this fact does not afford good ground for a new trial. No good objection to the testimony could be made, nor was continuance asked. See *Dredging Co.* v. *Christie.* 196 Ala. 421, 72 So. 124.

The conclusions reached above, of course, make it unnecessary for us to discuss the question involved in the second or last trial.

Therefore, we conclude that the lower court erred in setting aside the verdict and judgment for thirteen thousand dollars rendered for the plaintiff in the first

trial, and for such error the judgment of the lower court in the second trial is reversed, and the judgment of the lower court in sustaining the motion and setting aside the verdict and judgment of thirteen thousand dollars for the plaintiff in the first trial is reversed and set aside, and judgment is rendered here for the appellant, reinstating the judgment of thirteen thousand dollars rendered for the plaintiff in the first trial of this case in the lower court.

*Reversed and judgment here.*