Cornish, d/b/a Cornish Lumber Co. *v.* McCoy

No. 39834 January 9, 1956 84 So. 2d 391

*Snow & Covington, Lyle V. Corey,* Meridian, for appellant.

*Nate S. Williamson, Lester F. Williamson, Donald Williamson,* Meridian; *Morse & Morse,* Poplarville, for appellee.

KYLE, J.

The appellee Floyd McCoy, as plaintiff, recovered a judgment in the Circuit Court of Lauderdale County against the appellant, W. H. Cornish, doing business as Cornish Lumber Company, defendant in the court below, in an action for damages for the negligent injury and wrongful death of the appellee's son, Frank McCoy, an employee of the appellant; and from the judgment the appellant prosecutes his appeal.

The record shows that the deceased, Frank McCoy, was burned to death on October 29, 1952, when a lumber truck in which he was riding and which was owned by the appellant and was being operated by another employee of the appellant caught fire near Lumberton, in Pearl River County, while the decedent and the driver of the truck were on their way to New Orleans for a load of lumber, which they were to haul back to the appellant's lumber yard in Lauderdale County. The decedent was an unmarried minor, 20 years of age, at the time of his injury and death. He had been working for the appellant since he was 15 years of age. He was a member of a large family, which consisted of the father and mother and nine children. The declaration was filed by the father, as plaintiff, in his own behalf and for the use and benefit of the mother and the minor brothers and sisters of the decedent.

The declaration alleged that the defendant had failed to use reasonable care to furnish the deceased, Frank McCoy, a reasonably safe truck in which to work; that the truck was unsafe because of the fact that the crank case leaked grease and oil and the gasoline tank leaked gasoline; that the truck had previously caught fire, and the defendant had knowledge of that fact; and that the defendant had negligently failed to have a fire extinguisher carried on the truck as required by the statute.

The defendant's answer consisted of a general denial of the allegations of negligence contained in the declaration and an averment that the accident was due solely to the negligence of the deceased and his fellow-employee.

The plaintiff's evidence consisted mainly of the testimony of Willie McCaleb, who was driving the truck the day that Frank McCoy was burned to death. The truck was a 1951 or 1952 Chevrolet 2-ton truck, with a flat tandem trailer. The truck had a saddle tank that went all the way across the end of the truck. McCaleb testified that he filled the tank with gasoline during the early part of the night before he left Marion. Mr. Cornish and Frank McCoy were standing by when the tank was filled. The gas line had been taped up; it leaked a little, but it was not running. The hand brake drum, which later caught fire, was about two feet from the leaking gas line. There were holes in the gas tank where screws were screwed into the tank. Some of the screws were missing. Some of the gas "slushed out", as the truck was being driven down the highway. "It sloshed from the gauge on the saddle tank and blew through the back window", which had a broken glass. McCaleb stated that the truck had caught on fire about three weeks before, while he was making a return trip from Wetumpka, Alabama; and he had told Mr. Cornish about that. He had also told Mr. Cornish before he left on the trip to New Orleans that the transmission was leaking.

McCaleb stated that he and McCoy left Marion about midnight, and when they were just outside the City of Lumberton McCoy told him that the truck was on fire. He pulled over on the highway shoulder at a 45 degree angle and stopped, and he and McCoy got out. He picked up a hand full of dirt and threw it on the fire, and there was an immediate explosion. The dirt was wet with gasoline that had run out of the tank, but he did not know that when he picked up the dirt and threw it on the

fire. McCoy was on his knees by the side of the truck; his clothes were saturated with gasoline; and when the explosion occurred his clothes caught fire. McCoy started running, and "he never quit running until he burn up his hide." An ambulance and a fire truck arrived at the scene of the fire about 30 minutes later, and McCoy was carried to the hospital at Poplarville. The doctor testified that the burns that he had received were second and third degree burns involving 90 per cent of the surface area of his body and he died at 9:30 that evening. McCaleb stated that there was no fire extinguisher on the truck. On cross-examination McCaleb denied that he and Frank McCoy had stopped and pulled off the road and made a fire by the side of the truck; and he denied that a through truck passed them while they were parked on the highway.

Several witnesses testified for the defendant concerning repairs that had been made on the truck only a short time before the fire. Cornish himself testified that he had tightened the screws on the gas tank and had checked the gas line the evening before the truck left on the trip to New Orleans, and the truck was in good mechanical condition when it left Marion. If there were any gas leaks, he did not see them. Cornish stated that McCaleb did not tell him that he had had a fire on the truck prior to the time he undertook to make the trip to New Orleans.

Two other witnesses were called to testify for the defendant. Joseph Ray Forte, a produce dealer of Petal, Mississippi, and a colored helper who was riding with him in his truck, testified that they passed a Cheverolet truck parked on the shoulder of the highway near Lumberton during the early morning of October 29, 1952. Forte stated that he was traveling at a rate of speed of about 40 miles per hour when he passed the parked truck, and he did not stop. He said that it was not quite daylight, and he could see a fire. "It looked like a

small fire blazed up about a foot and a half,'' 10 or 15 feet from the trailer. He saw one man standing right near the fire. It looked like he was backed up to the fire to warm. The trailer was not quite off the highway. On cross-examination Forte stated that he learned about 3:30 that afternoon that a Negro had burned to death on the highway. He admitted that he did not tell any highway patrolman or any public officer that he had seen the accident down there during the early morning.

D. K. Bevins, Jr., the colored boy who was traveling with Forte, testified that he saw the Chevrolet truck and trailer parked on the highway. There was a small fire, which seemed to be on the ground, and it looked like there was a man standing beside the truck. On cross-examination Bevins stated that it was about 5:00 or 5:30 o'clock in the morning when he and Mr. Forte passed the truck and trailer, and he could not be sure whether the fire was on the truck or just off the truck.

The jury after hearing the evidence returned a verdict for the plaintiff for the sum of $15,000.

The appellant's attorneys argue several points as grounds for reversal on this appeal. The first three points argued relate to errors in the instructions.

 █ The court granted to the plaintiff three instructions relating to the duty of the defendant to provide and have carried on the truck a fire extinguisher, as required by Section 8256, Code of 1942. the appellant does not claim that the instructions complained of were erroneous in any material particulars. But it is argued that the three instructions tended to emphasize unduly in the minds of the jurors the importance of a strict observance of the statutory requirement that such fire extinguisher be provided and be carried on the truck, and since there was no proof in the record to show that the lack of a fire extinguisher added to the plaintiff's damages in any way the lower court should not have

granted the three instructions. But we think there was no error in the action of the court in granting the three instructions which set forth the duty of the defendant to see that the truck was properly equipped with a fire extinguisher. The statutory requirement that a truck be equipped with a fire extinguisher which shall be kept ready for use at any time, was intended to provide a safe guard against the tragic consequences of an accident of this kind. And if such fire extinguisher had been available and ready for immediate use, McCaleb might not have been impelled to resort to the crude method that he used when he attempted to extinguish the fire by throwing dirt saturated with gasoline on the fire.

It is next argued that the court erred in granting the plaintiff's instruction which appears on page 358 of the record, in which the court instructed the jury that "it was a non-delegable duty of the defendant in this case to see that the truck on which the plaintiff's son was required to work * * * was reasonably safe for such services." The instruction complained of was erroneous and should not have been granted in the form requested. The master's duty to furnish a servant with a reasonable safe place in which to work is not absolute. The master's duty is to exercise reasonable care to furnish the servant with a reasonably safe place in which to work. Hooks v. Mills, 101 Miss. 91, 57 So. 745; Anderson v. McGrew, 154 Miss. 291, 122 So. 492; Eagle Cotton Oil Co. v. Pickett, 175 Miss. 577, 166 So. 764; Gulfport Fertilizer Co. v. Bilbo, 178 Miss. 791, 174 So. 65; Newell Contracting Co. v. Flynt, 172 Miss. 719, 161 So. 298; Allen Gravel Co. v. Curtis, 173 Miss. 416, 161 So. 670; Meridian Grain and Elevator Co. v. Jones, 176 Miss. 764, 169 So. 771; Aponaug Mfg. Co. v. Hammond, 185 Miss. 198, 187 So. 227; Stewart v. Kroger Grocery, etc. Co., 198 Miss. 371, 21 So. 2d 912. But we think that the error complained of in the above mentioned instruction was cured by other instructions which cor-

rectly defined the master's duty to exercise reasonable care to furnish the servant with a reasonably safe place to work. Gulfport Fertlizer Co. v. Bilbo, supra.

It is next argued that the court erred in granting the plaintiff's instruction which appears on page 364 of the record. But there is no merit in the criticism made of that instruction.

The main point argued by the appellant's attorneys, however, as ground for reversal of the judgment of the lower court is that the court erred in overruling the appellant's motion for a new trial on the ground of newly discovered evidence.

The jury returned its verdict on October 13, 1954, and judgment was entered in favor of the plaintiff on that day. Three weeks later the defendant filed a motion for a new trial on the ground of newly discovered evidence, and upon the hearing of that motion six witnesses testified that the witness, Willie McCaleb, had made statements to them or in their presence before the trial which were contradictory to the testimony given by him during the trial.

Bill Moore, a lumber inspector who lived in Meridian, testified that he had a conversation with Willie McCaleb at Shuqualak, a few miles north of Meridian, on January 8, 1954, and that he asked McCaleb in a joking way, "How come you burn that man's truck up?" And McCaleb's answer was, "Well, Captain Bill, it was cold and we just got out there and built us a fire." Moore also testified that McCaleb then stated to him that he and McCoy put some gas on the fire, and McCoy got some gas on himself and caught fire, and he tried to put him out and got burned himself. Willie Anderson, Bert Love and Joe Lee Johnson, who worked for the appellant, testified that they were present and heard McCaleb make the statement to Moore, but their version of what was said was slightly different from that given by Moore. Mrs. Roy Covington, who operated

a grocery store in the neighborhood of the Cornish Lumber Company plant, at Marion, testified that Willie McCaleb came into her store a few days after the fire and asked her to cash a check for him. While he was in the store she asked him about the fire—whether the gas tank blew up; and McCaleb's answer was, "No, Miss Nannie, truly it didn't. * * * If it hadn't been for Frank, it wouldn't have happened. * * * We built a fire, built it up too close to the gas tank, and he tried to put the fire out * * *, his clothes caught fire and he ran across the road, and when he ran I grabbed him, tried to put the fire out on the ground, and that is when I caught fire." Roy Covington testified that he was present when McCaleb made the statement to his wife, and his version of the statement was the same as that of his wife.

We think there was no error in the action of the trial judge in overruling the motion for a new trial on the ground of newly discovered evidence, for the reasons, (1) that the newly discovered evidence merely went to discredit or impeach the witness McCaleb, and (2) that the appellant's own testimony on the motion for a new trial failed to show that it was not owing to a want of due diligence on his part that the evidence was not discovered before the trial.

"As a general rule, a new trial will not be ordered because of evidence of statements which are shown to have been made by a witness before the trial, or thereafter, testimony of this character affording only another means of impeaching a witness. The rule that newly discovered evidence which goes merely to impeach a former witness is not ground for a new trial is a rule of policy intended to secure care and viligance and prevent parties from coming forward subsequently with evidence which close investigation would have disclosed at the time of the trial." 39 Am. Jur. p. 174, New Trial, par. 167.

None of the witnesses who testified during the hearing on the motion for a new trial in this case were in Pearl

River County at the time Frank McCoy was burned to death. None of them professed to know anything about how the fire originated. Their testimony amounted to nothing more than a contradiction of the witness McCaleb or the impeachment of his credibility; and it is settled law in this state that, when the newly discovered evidence merely goes to discredit or impeach an adverse witness who testified in the trial, it is not, as a general rule, good ground for a new trial. Moore v. Chicago, St. Louis & N.O. R. Co., 59 Miss. 243; Vanderburg v. Campbell, 64 Miss. 89, 8 So. 206; Bailey v. State, 94 Miss. 863, 48 So. 227, 20 A.L.R. (N.S.) 409; Ennis v. Yazoo & M. V. R. Co., 118 Miss. 509, 79 So. 73. As stated by the Court in the Ennis case, supra, such testimony may be discovered in almost every case; and if the court should hold that a new trial must be granted upon newly discovered evidence that merely goes to discredit or impeach an adverse witness, there would be no end to litigation.

The appellant testified that the evidence produced on the motion for a new trial did not come to his knowledge until after the trial. But the appellant's testimony failed to show that he had exercised due diligence to discover the facts before the trial. The witness McCaleb was the appellant's own employee and was in charge of the appellant's truck at the time of the fire and the only eye witness to the fire. Yet the appellant stated that he never talked to McCaleb, or tried to talk to him, about the fire during the two years that elapsed before the case was tried. The statement that McCaleb is alleged to have made to Bill Moore at Shuqualak was made eight months before the trial, and the statement made to Mrs. Covington in her store at Marion was made soon after the fire occurred. Both statements were made in public places and in the presence of several people, including other employees of the appellant and persons living in the neighborhood of the appellant's plant; and

it is reasonable to assume that if the appellant had questioned McCaleb about the fire and had made other reasonable inquiries, he could have learned before the trial what McCaleb's testimony would be, and if McCaleb had made conflicting statements, what those statements were.

We find no reversible error in the record, and the judgment of the lower court is affirmed.

Affirmed.

*McGehee,* C.J., and *Hall, Arrington* and *Gillespie,* JJ., concur.