Anne P. KOZAR, Administratrix of the Estate of John P. Kozar, Deceased, Plaintiff-Appellee,

v.

The CHESAPEAKE AND OHIO RAILWAY COMPANY, Defendant-Appellant.

No. 20962.

United States Court of Appeals, Sixth Circuit.

Oct. 19, 1971.

William F. Hunting, Jr., Grand Rapids, Mich., for defendant-appellant; Robert A. Straub, Southfield, Mich., Patrick M. Muldoon, Grand Rapids, Mich., on brief.

Stephen C. Bransdorfer, Grand Rapids, Mich., for plaintiff-appellee; James A. Engbers, Henry L. Guikema, Grand Rapids, Mich., on brief.

Before PHILLIPS, Chief Judge, and EDWARDS and BROOKS, Circuit Judges.

BROOKS, Circuit Judge.

This appeal is from a judgment awarding the plaintiff-appellee, Anne P. Kozar, Administratrix of the estate of John P. Kozar, deceased, the sums of $120,045.40 as compensatory damages and $70,000 as punitive damages resulting from the death of her husband, John P. Kozar, while he was working as foreman of a wrecker crew for the defendant-appellant, The Chesapeake and Ohio Railway Company. The action was brought under the Federal Employers' Liability Act, as amended 45 U.S.C. §§ 51–60, and tried to a jury in the United States District Court for the Western District of Michigan, Southern Division.

On February 12, 1968, John Kozar, a long time employee of the railroad, was in charge of a wrecking crew engaged in rerailing a refrigerator car that had gone off the tracks near Holland, Michigan. The derailed car was fifty feet long and weighed approximately 40 tons. It was overturned in a ravine and to re-rail it a wrecker crane known as a DK–8 was employed. There were two hoist lines on the crane and the one in use at the time of the accident was controlled by both a hand brake and a foot brake which were operated, as were the other controls, from the cab of the crane by a member of the wrecker crew. When the refrigerator car was being raised from the ravine it was upside down and perpendicular to the tracks. While being raised the roof caught near the tracks leaving the other end of the car suspended ten or twelve feet above the ground. This position required that railroad ties be placed under the car so that it might be pivoted parallel to the tracks before being rerailed. The decedent sent his men to get the railroad ties, and while the crew members were getting them, the suspended car fell on the decedent causing his instant death.

The pleadings of the appellee administratrix base her claims for compensatory damages on the negligence of the appellant railroad in failing to maintain and repair the brake on the DK–8 wrecker crane and her claim for punitive damages upon the willful, wanton or reckless disregard of the appellant for the safety and life of her decedent. The appellant railroad denied negligence, plead contributory negligence and asserted as a matter of law that punitive damages could not be recovered under the Federal Employers' Liability Act. These issues were sharply contested during the jury trial that commenced on March 9th and concluded with a verdict for the appellee on March 25th, 1970. The verdict awarded compensatory damages of $76,545.40 to the widow and infant son for loss of support; $8,000 to the widow for loss of services; $5,000 to the two adult daughters for loss of services; $30,000 to the infant son for loss of services; $500 to the estate for pre-death fright; and $70,000 in punitive damages. We affirm the awards of

compensatory damages, except the $5,000 award to the two adult daughters for loss of services, and the $30,000 award to the infant son for loss of services. For the reasons we relate, these two awards are vacated as is the $70,000 award of punitive damages.

The appellant's motion for a new trial alleged more than seventy instances of prejudicial error, substantially all of which are reasserted on appeal, and the "Omnibus Opinion" of the District Court denying the motion for a new trial is ninety-four pages in length, 320 F.Supp. 335 (1970).

We turn to the issues requiring comment.

### Punitive Damages

Since we hold that punitive damages are not recoverable under the Federal Employers' Liability Act, no purpose would be served by setting forth the facts upon which the appellee relies to support the $70,000 award.

There are two basic reasons advanced in the "Omnibus Opinion" of the District Court for submitting to the jury, under the usual instructions, the issue of punitive damages. First, it is argued that the legislative history of the Act indicates that it was not its purpose to limit or take away any "remedy" available at common law and at common law punitive damages were available. Second, permitting the recovery of punitive damages advances the objective of the Act to "[place] such stringent liability upon the railroads for injuries to their employees as to compel the highest safeguarding of the lives and limbs of men in this dangerous employment." We conclude that neither reason is a sound basis for accepting an interpretation of the Act that would permit the unprecedented recovery of punitive damages.

■■ Admittedly, the legislative history of the Act shows that its provisions were not to limit or take away any "remedy" available at common law to an injured employee.[1] But it is a mistake to characterize the right to recover punitive damages at common law a "common law remedy". There is an important distinction between a "remedy" which Bouvier's Law Dictionary defines as "the means employed to enforce a right or redress an injury", and "damages" which are defined as "[t]he indemnity recoverable by a person who has sustained an injury * * * and the term includes not only compensatory, but also exemplary or punitive or vindictive * * * damages." Damages are simply a measure of injury, and to say that at common law there was "punitive damages as a right of action" or there was available "the common law remedy action of punitive damages" or a "punitive damages remedy" is a misuse of the legal terminology. Thus, when the legislative history of the Act is examined and shows that Congress never intended the Act as a restriction on the remedies available to an injured employee, it is not referring to a damages theory. Moreover, the cases cited by the District Court[2] as examples of

1. "It is manifest from a consideration of the reports, both of the Senate and House committees, when the measure was pending before these bodies prior to its enactment, that the purpose of the statute was to extend and enlarge the remedy provided by law to employees engaged in interstate commerce in cases of death or injury to such employees while engaged in such service. No purpose or intent on the part of Congress can be found to limit or to take away from such an employee any right theretofore existing by which such employees were entitled to a more extended remedy than that conferred upon them by the

Act." Senate Judiciary Committee's Report on the 1910 amendments to the Federal Employers' Liability Act, 45 Cong.Rec. 4048 (1910).

2. Philadelphia W. & B. Ry. Co. v. Quigley, 62 U.S. 202, 16 L.Ed. 73 (1858), mechanic sued railroad for defamation in disparaging his ability as a builder of depots; Missouri Pac. Ry. v. Humes, 115 U.S. 512, 6 S.Ct. 110, 29 L.Ed. 463 (1885), plaintiff sought double damages for killing of mule by railroad; Barry v. Edmunds, 116 U.S. 550, 6 S.Ct. 501, 29 L.Ed. 729 (1886), plaintiff sued county treasurer for wrongfully carrying

early common law cases permitting recovery of punitive damages are distinguishable from the case of a railroad employee or an employee's administrator suing his employer for injuries or death suffered on the job. Most of the cases relied upon by the District Court are cases of intentional torts.

The District Court, in its "Omnibus Opinion", correctly set forth the humanitarian and beneficent reasons for the adoption of the Federal Employers' Liability Act by Congress. However, no matter how persuasive this policy argument may be, it cannot stand as the law in light of the clear, unambiguous statements in the line of Supreme Court authorities holding that damages recoverable under the Act are compensatory only.

In Gulf, Colorado and Santa Fe Railway Company v. McGinnis, 228 U.S. 173, 175–176, 33 S.Ct. 426, 427, 57 L.Ed. 785 (1913), it is stated:

"In a series of cases lately decided by this court, the act in this aspect has been construed as intended only to compensate the surviving relatives of such a deceased employé for the *actual pecuniary loss* resulting to the particular person or persons for whose benefit an action is given. The recovery must therefore be limited to compensating those relatives for whose benefit the administrator sues as are shown to have sustained some *pecuniary loss*. Michigan Central Railroad v. Vreeland, 227 U.S. 59, [33 S.Ct. 192, 57 L.Ed. 417]; American Railroad [Co. of Porto Rico] v. Didricksen, 227 U.S. 145, 33 S.Ct. 224, 57 L.Ed. 456]. In the last cited case, speaking of the

Employers' Liability Act, we said (p. 149, [33 S.Ct. p. 225]): 'The cause of action which was created in behalf of the injured employé did not survive his death, nor pass to his representatives. But the act, in case of the death of such an employé from his injury, creates a new and distinct right of action for the benefit of the dependent relatives named in the statute. *The damages recoverable are limited to such loss as results to them because they have been deprived of a reasonable expectation of pecuniary benefits by the wrongful death of the injured employé. The damage is limited strictly to the financial loss thus sustained.*'

"The statutory action of an administrator is not for the equal benefit of each of the surviving relatives for whose benefit the suit is brought. Though the judgment may be for a gross amount, the interest of each beneficiary must be measured by his or her individual *pecuniary loss*. That apportionment is for the jury to return. This will, of course, exclude any recovery in behalf of such as show no *pecuniary loss*." (Emphasis added).

In Michigan Central Railroad Company v. Vreeland, 227 U.S. 59, 68–69, 33 S.Ct. 192, 195, 57 L.Ed. 417 (1913), in commenting upon the type of action created by the Federal Employers' Liability Act and the damages recoverable, the following unequivocal statements are made:

"It is a liability for the loss and damage sustained by relatives dependent upon the decedent. *It is therefore a liability for the pecuniary damage resulting to them, and for that only.*

away and levying on his horse for taxes due; Denver R. & G. Ry. Co. v. Harris, 122 U.S. 597, 7 S.Ct. 1286, 30 L.Ed. 1146 (1887), plaintiff, employee of Atchison, Topeka and Santa Fe Railway Company, sued Denver and Rio Grande R. Co. for bullet wound received in gun battle between employees of the two railroads; Brown v. Memphis & C. Ry. Co., 7 F. 51 (C.C.W.D.Tenn.1881), plaintiff sued railroad company for wrongful exclusion from the "ladies car"; Gallena

v. Hot Springs R. R., 13 F. 116 (C.C. E.D.Ark.1882), passenger ejected from train suing for damages; Brown v. Evans, 17 F. 912 (C.C.D.Nev.1883), assault and battery case not involving a railroad; Fell v. Northern Pac. R. Co., 44 F. 248 (C.C.D.N.D.1890), passenger ejected from train by conductor; Winters v. Cowen, 90 F. 99 (C.C.N.D.Ohio 1898), aff'd 96 F. 929 (6th Cir. 1899), plaintiff passenger ejected from train suing for damages.

"The statute [Federal Employers' Liability Act] in giving an action for the benefit of certain members of the family of the decedent, is essentially identical with the first act which ever provided for a cause of action arising out of the death of a human being,—that of 9 and 10 Vict., known as Lord Campbell's act.[3] This act has been, in its distinguishing features, re-enacted in many of the states, and both in the courts of the states and of England has been construed not as operating as a continuance of any right of action which the injured person would have had but for his death, but as a new or independent cause of action for the purpose of compensating certain dependent members of the family for the deprivation, *pecuniarily*, resulting to them from his wrongful death." (Emphasis added).

In American Railroad Company of Porto Rico v. Didricksen, 227 U.S. 145, 149, 33 S.Ct. 224, 225, 57 L.Ed. 456 (1913), the rule that only pecuniary damages are recoverable under the FELA is reiterated.

"But the act, in case of the death of such an employé from his injury, creates a new and distinct right of action for the benefit of the dependent relatives named in the statute. The damages recoverable are limited to such loss as results to them because they have been deprived of a reasonable expectation of *pecuniary benefits* by the wrongful death of the injured employé. *The damage is limited strictly to the financial loss thus sustained.*" (Emphasis added).

Also, in the early case of Cain v. Southern Railway Company, 199 F. 211 (C.C.E.D.Tenn., 1911), it was held that recovery of damages under the Act of 1908 is limited to the " * * * pecuniary injury or loss sustained by the beneficiaries from the death of the deceased * * * " and " * * * excluding all

consideration of punitive elements. * * * " In Thompson v. Camp, 163 F.2d 396, 403 (6th Cir. 1947), cert. denied, 333 U.S. 831, 68 S.Ct. 458, 92 L.Ed. 1116, motion sustained, 167 F.2d 733, cert. denied, 335 U.S. 824, 69 S.Ct. 48, 93 L.Ed. 378, the "general rule" was also stated:

"Damages in such a case 'should be equivalent to compensation for the deprivation of the reasonable expectation of pecuniary benefits that would have resulted from the continued life of the deceased', and 'that when future payments or other pecuniary benefits are to be anticipated, the verdict should be made upon the basis of their present value only', Chesapeake & O. R. Co. v. Kelly, 241 U.S. 485 at page 489, 491, [36 S.Ct. 630, 60 L.Ed. 1117]; * * Gulf, C. & S. F. Ry. v. Moser, 275 U.S. 133 [48 S.Ct. 49, 72 L.Ed. 200]."

We do not believe that United States Steel Corporation v. Fuhrman, 407 F.2d 1143 (6th Cir. 1969), which reversed the District Court in Petition of Den Norske Amerikalinje A/S, 276 F.Supp. 163 (N. D.Ohio, 1967), requires a different result from the conclusion that punitive damages are not recoverable under FELA. *Den Norske* did hold that punitive damages were recoverable from a tortfeasor in an admiralty proceeding and volunteered the statement that Section 59 of FELA permitted a deceased railroader to sue for punitive damages. However, the Mississippi case of Ennis v. Yazoo & M. V. Ry., 118 Miss. 509, 79 So. 73 (1918), cited by the District Court as allowing punitive damages was a state wrongful death action controlled by state law, and actually by way of negative inference the opinion of the Mississippi court recognizes that compensatory damages are the "measure of damages * * recoverable under the Federal Employers' Liability Act." Also, the statement in the opinion of the District Court that Section 59 of the Act added by the Amendment of 1910 permits recovery of

---

**3.** "It is the general rule in this country that exemplary or punitive damages for death are not recoverable under statutes modeled after Lord Campbell's Act, or under other forms of statute which do not expressly or by clear implication confer a right to such damages." 94 A.L.R. 384, 386.

punitive damages is refuted in St. Louis I. M. & S. R. Company v. Craft, 237 U.S. 648, 658, 35 S.Ct. 704, 706, 59 L.Ed. 1160 (1915).

> "On the contrary, it [§ 59] means that the right existing in the injured person at his death—a right covering his loss and suffering while he lived, but taking no account of his premature death or of what he would have earned or accomplished in the natural span of life—shall survive to his personal representative to the end that it may be enforced and the proceeds paid to the relatives indicated. And when this provision and § 1 are read together the conclusion is unavoidable that the personal representative is to recover on behalf of the designated beneficiaries, not only such damages as will compensate them for their own *pecuniary* loss, but also such damages as will be reasonably *compensatory* for the loss and suffering of the injured person while he lived." (Emphasis added).

*Den Norske* was reversed by this Court in *Fuhrman* on the grounds that the findings of fact upon which the District Court relied to make the award of punitive damages were clearly erroneous, and any inference that may be extracted from the reading of *Fuhrman* that punitive damages may be recoverable in an admiralty proceeding cannot be regarded as controlling in this case.

For the foregoing reasons, that part of the judgment in this case making an award for punitive damages is vacated. It should also be noted that there is not a single case since the enactment of FELA in 1908 in which punitive damages have been allowed.

### Compensatory Damages

■ The sum of $5,000 in compensatory damages was awarded to the two adult married daughters of the decedent. Timely objection to charging the jury on this issue was made by appellant and was based on the assertion that there was no evidence from which the jury could reasonably infer that the adult children would have benefited financially from a continuance of decedent's life. We agree.

Sandra Beurkens, the older of the two daughters, graduated from high school in 1959 and worked in a bank continuously from graduation until after she was married in 1966. She testified that her father gave her a wedding gift of $1,000 which he borrowed and that she relied upon him for advice and counsel. "Things normal that other children would ask their dad for."

Pamela Murray, the other daughter, after graduating from high school, financed her own college education by working during summer and Christmas vacations. At the time of her father's death, she was living with her mother who for some time had been separated from her father. She was teaching school and was engaged to be married. There was testimony that while she was still attending school her father gave her some money to purchase a car.

The rule governing the recovery of compensatory damages by adult surviving children afforded by FELA is concisely set forth in Thompson v. Camp, 163 F.2d 396, 403 (6th Cir. 1947), cert. denied 333 U.S. 831, 68 S.Ct. 458, 92 L. Ed. 1116, motion sustained 167 F.2d 733, cert. denied 335 U.S. 824, 69 S.Ct. 48, 93 L.Ed. 378.

> "In the absence of evidence that an adult child is either dependent upon or had any reasonable grounds for expecting any pecuniary benefit from a continuance of the decedent's life, a recovery on behalf of such child is excluded." (Citations omitted).

Neither of decedent's adult daughters was dependent upon him and evidence of an occasional gift and casual advice standing alone does not provide reasonable grounds sufficient to support a recovery for pecuniary loss. Where the fact of damage is uncertain, the rule that precludes the recovery of uncertain and speculative damages applies. Ander-

son v. Mt. Clemens Pottery Company, 328 U.S. 680, 688, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946); Story Parchment Company v. Paterson Parchment Paper Company, 282 U.S. 555, 51 S.Ct. 248, 75 L. Ed. 544 (1931); Riverside Coal Company v. United Mine Workers of America, 410 F.2d 267 (6th Cir. 1969); Coverdell v. Mid-South Farm Equipment Association, 335 F.2d 9 (6th Cir. 1964). Since there was no probative evidence that permitted the jury to resort to other than sheer speculation or guesswork that the claimants would be damaged by being deprived of pecuniary benefits from the continuance of their father's life, that portion of the judgment effecting the $5,000 award is vacated.

■ The jury was also permitted to consider the award of post-majority damages to the minor son of the deceased, who was 8 years old at the time of his father's death. In addition to the compensatory award of $76,000 for the loss of contribution for support of the widow and minor son of the decedent, an award of $30,000 was made to the minor son for the loss of the care, attention and training his father would have provided him during both his minority and thereafter. Objection was made by the appellant to that portion of the charge permitting the jury to assess post-majority damages. As in the case of the adult daughters, the objection was based on the contention that there was no probative evidence to support an award for loss of pecuniary benefits that the boy would sustain after reaching majority. Again, we agree.

Other than evidence of a close relationship and of the usual parental affection and solicitude that generally are displayed between father and son, there was no showing of any facts from which just and reasonable inferences might be drawn to establish pecuniary loss. The decedent, if he had continued to live,

would have been almost 70 years of age when his son reached his majority. He had provided only high school education for his daughters and there was simply no probative evidence adduced from his background and pattern of life to support a finding that at 70 years of age he would have provided pecuniary support or assistance to his emancipated son. As has already been noted above, while difficulty of ascertainment of damages is not to be confused with right to recover, the fact of damage must be established.

■ Since plaintiff has failed to carry her burden of proving the fact of damage, and since it cannot be determined how much of the $30,000 award, if any, was for post-majority damages, it is set aside and on remand of this case these issues will be retried. *See* Thompson v. Camp, 167 F.2d 733 (6th Cir. 1949), cert. denied 335 U.S. 824, 69 S.Ct. 48, 93 L.Ed. 378. Unless there is probative evidence that would support the fact that post-majority pecuniary damage would be sustained, that issue shall not again be submitted to the jury.

### Interest

■ The judgment of the District Court provides that the appellee recover interest on the sums awarded as damages from August 26, 1968, the date of the filing of the complaint. This is error. The judgment should provide that interest be paid from the date of the entry of judgment. Murphy v. Lehigh Valley R. R. Company, 63 F.Supp. 928 (E.D. N.Y.1945), aff'd 158 F.2d 481 (2d Cir. 1946); 28 U.S.C. § 1961.

All other assignments of error by the appellant have been considered and found either to be without merit or not to affect the substantial rights of the parties.

The judgment is affirmed in part, vacated in part, and remanded for proceedings consistent with this opinion.