# STATE OF MINNESOTA
# IN COURT OF APPEALS
# A14-0277

Terry Boyd,
Respondent,

vs.

BNSF Railway Company,
Appellant.

**Filed December 29, 2014**
**Affirmed**
**Hooten , Judge**
**Concurring in part, dissenting in part, Rodenberg, Judge**

Hennepin County District Court
File No. 27-CV-12-6144

Paula M. Jossart, Christopher J. Moreland, Bremseth Law Firm, P.C., Minnetonka, Minnesota (for respondent)

Timothy K. Masterson, R. John Wells, Karl E. Robinson, Sweeney & Masterson, P.A., St. Paul, Minnesota (for appellant)

Considered and decided by Rodenberg, Presiding Judge; Hooten, Judge; and Kirk, Judge.

## S Y L L A B U S

An award of double post-offer costs to plaintiff under Minn. R. Civ. P. 68.03(b)(2), when defendant rejects plaintiff's settlement offer and plaintiff subsequently obtains a verdict more favorable than the settlement offer, is permissible in a Federal Employers' Liability Act lawsuit brought in a Minnesota state court.

**O P I N I O N**

**HOOTEN**, Judge

In this appeal from a judgment in a Federal Employers' Liability Act (FELA) action, appellant BNSF Railway Company challenges the district court's award of costs and disbursements to respondent Terry Boyd, arguing that: (1) Minn. R. Civ. P. 68.03(b)(2), which permits enhanced costs based on the rejection of a settlement demand, is preempted by FELA; and (2) the district court abused its discretion by awarding certain expert costs. Because the Minnesota rule is not preempted by FELA and the district court acted within its discretion when awarding expert costs, we affirm.

**FACTS**

In February 2012, Boyd filed a five-count complaint against BNSF, alleging violations of FELA, 45 U.S.C. §§ 51–60 (2012); the Federal Safety Appliance Act (FSAA), 49 U.S.C. §§ 20301–06 (2012); and the Locomotive Inspection Act (LIA), 49 U.S.C. §§ 20701–03 (2012), stemming largely from a March 6, 2011 incident in which Boyd slipped on a ladder and was injured in the course of his employment with BNSF.[1]

On January 15, 2013, Boyd made BNSF a settlement offer of $275,000 pursuant to Minn. R. Civ. P. 68.01. This offer was not accepted by BNSF, and the case proceeded to a trial of Boyd's FELA and LIA claims on May 28, 2013.[2] The jury returned a verdict for Boyd on both FELA claims, finding that BNSF failed to provide Boyd with a reasonably safe workplace and that BNSF's negligence caused injury to Boyd in violation

---

[1] Boyd also brought a negligence claim relating to a 2009 incident in which he injured his lower back. Boyd ultimately did not pursue this claim at trial.

[2] Before trial, the district court granted BNSF summary judgment on the FSAA claim.

of FELA.  The jury found no violation of LIA.  The jury awarded Boyd damages in the amount of $610,954.61.  The district court granted BNSF's motion for offsets and reduced the award, entering judgment in favor of Boyd for $411,954.98.

After Boyd filed an affidavit of taxation of costs pursuant to Minn. R. Civ. P. 54.04(b), the court administrator taxed $152,537.16 in costs and disbursements against BNSF, which included $62,584.48 under rule 68.03.  These costs and disbursements included expert fees in the amount of $37,985.74 for Alan Blackwell and $20,558.66 for Dr. Robert Andres.

BNSF challenged the award with the district court, arguing that the doubling of costs under rule 68.03 is preempted by FELA.  The district court held that FELA does not preempt rule 68.03.  The district court reasoned that because rule 68.03 "is not meant to make a party whole" and "is not an element of damages initially sought by [Boyd]," its application is unlike that of the prejudgment-interest rule at issue in *Monessen Sw. Ry. v. Morgan*, 486 U.S. 330, 108 S. Ct. 1837 (1988).  The district court also distinguished enhanced costs under rule 68.03 from punitive damages available under Minn. Stat. § 549.20, subd. 1(a) (2012).  Therefore, the district court held that rule 68.03 could be applied in this action.  BNSF also challenged the expert fees taxed by the court administrator.  The district court upheld the fees for Blackwell and reduced the fees for Dr. Andres to $10,352.88.  With that fee reduction and other cost changes, the district court ultimately taxed BNSF $133,751.12 for costs and disbursements.  BNSF challenges this award.

3

## ISSUES

I.     Does FELA preempt the doubling of post-offer costs and disbursements pursuant to Minn. R. Civ. P. 68.03?

II.    Did the district court abuse its discretion by awarding costs and disbursements for the expert fees charged by Blackwell and Dr. Andres?

## ANALYSIS

### I.

BNSF disputes the district court's award of double costs under Minn. R. Civ. P. 68.03(b)(2), arguing that the doubling of costs is preempted by FELA. "Whether federal law preempts state law is an issue of statutory interpretation, which we review de novo." *Meyer v. Nwokedi*, 777 N.W.2d 218, 222 (Minn. 2010).

### A. Minnesota Rule of Civil Procedure 68.03

Minnesota Rule of Civil Procedure 68.03(b)(2) allows a plaintiff, who serves an offer of settlement on the defendant and wins a judgment greater than that offer, to recover (1) the rule 54.04 costs to which it would otherwise be entitled, and (2) an additional amount equal to its rule 54.04 costs incurred after the date of the offer.[3] Rule 68.03 balances this potential reward for plaintiffs with a similar incentive for defendants. If a plaintiff rejects a defendant's offer of settlement and the verdict is in favor of the

---

[3] Minn. R. Civ. P. 68.03(b)(2) provides, in relevant part:

> If the offeror is a plaintiff, and the relief awarded is less favorable to the defendant-offeree than the offer, the defendant-offeree must pay, in addition to the costs and disbursements to which the plaintiff-offeror is entitled under Rule 54.04, an amount equal to the plaintiff-offeror's costs and disbursements incurred after service of the offer.

4

plaintiff but less favorable than defendant's offer, the defendant is awarded its post-offer costs and does not have to pay plaintiff's costs. Minn. R. Civ. P. 68.03(b)(1). Thus, under this scenario, the defendant effectively receives "double" post-offer costs; the defendant recovers its post-offer costs and is relieved of having to pay the post-offer costs a plaintiff would otherwise be entitled to under rule 54.04. *See* Minn. R. Civ. P. 68 2008 advisory comm. cmt. ("[U]nder the revised rule, a plaintiff who rejects a Rule 68 offer suffers *dual adverse consequences*: loss of the right to recover his costs and required payment of the defendant's costs." (emphasis added)).

## B. FELA

FELA provides that "[e]very common carrier by railroad . . . shall be liable in damages to any person suffering injury while he is employed by such carrier . . . for such injury or death resulting in whole or in part from the negligence" of the railroad. 45 U.S.C. § 51. In creating this right of recovery for railroad workers, Congress "crafted a federal remedy that shifted part of the human overhead of doing business from employees to their employers." *Consol. Rail Corp. v. Gottshall*, 512 U.S. 532, 542, 114 S. Ct. 2396, 2404 (1994) (quotations omitted). Congress has given state courts concurrent jurisdiction with federal courts over adjudication of FELA claims, 45 U.S.C. § 56, and has prohibited railroad defendants in state courts from removing FELA lawsuits to United States district courts. 28 U.S.C. § 1445(a) (2012). FELA does not expressly address the decision to award costs and disbursements to the prevailing party or the shifting of those costs and disbursements between the parties.

## C. Preemption

The Supremacy Clause of the United States Constitution provides that "[t]his Constitution, and the Laws of the United States . . . shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. The Supremacy Clause "invalidates state laws that interfere with, or are contrary to, federal law." *Hillsborough Cnty., Fla. v. Automated Med. Labs., Inc.*, 471 U.S. 707, 712, 105 S. Ct. 2371, 2375 (1985) (quotation omitted).

Determining whether federal law preempts a state law under the Supremacy Clause "starts with the basic assumption that Congress did not intend to displace state law." *Bldg. & Constr. Trades Council v. Assoc. Builders & Contractors of Mass./R.I., Inc.*, 507 U.S. 218, 224, 113 S. Ct 1190, 1194 (1993) (quotation omitted). This "normal presumption against pre-emption" is "buttressed" when courts act in accordance with a "neutral state Rule regarding the administration of state courts." *Johnson v. Fankell*, 520 U.S. 911, 918, 117 S. Ct. 1800, 1805 (1997); *see also Howlett v. Rose*, 496 U.S. 356, 372, 110 S. Ct. 2430, 2441 (1990) ("States may apply their own neutral procedural rules to federal claims, unless those rules are pre-empted by federal law."). BNSF thus bears a "heavy burden of persuasion" in arguing that the Minnesota rule is preempted by federal law. *Johnson*, 520 U.S. at 918, 117 S. Ct. at 1805. As our supreme court has warned, "[p]reemption of state law by federal statute or regulation is not favored in the absence of pervasive reasons—either that the nature of the regulated subject matter permits no other conclusion, or that the Congress has unmistakably so ordained." *Pikop v. Burlington N.*

*R.R.*, 390 N.W.2d 743, 747 (Minn. 1986) (quotations omitted); *see also Gretsch v. Vantium Capital, Inc.*, 846 N.W.2d 424, 433 (Minn. 2014) ("We have . . . recognized that preemption is generally disfavored.").

Applying United States Supreme Court precedent, our supreme court has recognized three ways in which federal law may preempt state law: (1) explicit preemption, in the "rare" case where Congress explicitly states that the federal law is meant to preempt "any state action in the field"; (2) implied field preemption, where Congressional intent to preempt state law is inferred either from "the extent of the federal involvement [in the field] or the scope of the federal interest"; and (3) conflict-in-fact preemption, where the federal law makes it impossible to comply with both state and federal law, or "the state law is an obstacle to the accomplishment of the purposes of the federal scheme." *Pikop*, 390 N.W.2d at 748.

BNSF does not contend that this case falls under the rubric of explicit preemption. There is no language in FELA explicitly at odds with rule 68.03, and we conclude that this is not the "rare" case in which Congress has "expressly preclude[d] all state law in a given regulatory field." *Id.*

Congressional intent to impliedly preempt state law by occupying a legislative field can be inferred "where the scheme of federal regulation is sufficiently comprehensive to make reasonable the inference that Congress left no room for supplementary state regulation." *In re Estate of Barg*, 752 N.W.2d 52, 63 (Minn. 2008). The Supreme Court has held that FELA occupies the field of personal-injury lawsuits against railroads by railroad workers. *See, e.g.*, *N.Y. Cent. & Hudson River R.R. v.*

7

*Tonsellito*, 244 U.S. 360, 361, 37 S. Ct. 620, 621 (1917) ("[FELA] is comprehensive and also exclusive in respect of a railroad's liability for injuries suffered by its employees while engaging in interstate commerce." (quotation omitted)). While FELA occupies the field of railroad employee recovery in personal-injury suits against their employers, *id.*, "FELA cases adjudicated in state courts are subject to state procedural rules." *St. Louis Sw. Ry. v. Dickerson*, 470 U.S. 409, 411, 105 S. Ct. 1347, 1348 (1985). Thus, whether rule 68.03 is impliedly preempted by FELA will depend on whether the rule invades substantive rights under FELA.

Under FELA precedent, conflict-in-fact preemption is similarly premised on whether the state rule interferes with the federal right. Because FELA is silent as to cost-shifting, compliance with both FELA and rule 68.03 is not impossible. *Cf. Pikop*, 390 N.W.2d at 748. The question instead is whether rule 68.03 "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" underlying FELA. *See Felder v. Casey*, 487 U.S. 131, 138, 108 S. Ct. 2302, 2307 (1988) (quotation omitted). When adjudicating federal rights, state courts "may establish the rules of procedure governing litigation in their own courts," but "where state courts entertain a federally created cause of action, the 'federal right cannot be defeated by the forms of local practice.'" *Id.* at 138, 108 S. Ct. at 2306 (quoting *Brown v. W. R.R.*, 338 U.S. 294, 296, 70 S. Ct. 105, 106 (1949)).

Contrary to the arguments of the parties, preemption does not hinge upon whether rule 68.03 is characterized as "substantive" or "procedural." Simply looking at rule 68.03 in a vacuum and choosing whether its operation looks more like "substance" or

8

"procedure" would do nothing to aid our preemption analysis. *Cf. St. Louis Sw. Ry.*, 470 U.S. at 411, 105 S. Ct. at 1348 ("[T]he Court's decisions in this area 'point up the impossibility of laying down a precise rule to distinguish substance from procedure.'" (quoting *Brown*, 338 U.S. at 296, 70 S. Ct. at 106) (quotation marks omitted)).

Instead, we look at whether the neutral state rule, be it inherently substantive or procedural, encroaches upon the substance of the federal cause of action created by Congress. *See Dice v. Akron, Canton & Youngstown R.R.*, 342 U.S. 354, 363, 72 S. Ct. 312, 315 (1952). The Supreme Court has used a two-pronged test when examining the application of a state rule to a federal cause of action to determine whether the state rule is inconsistent with the federal right created by Congress and therefore preempted. The first prong is whether the state rule "burdens the exercise of the federal right" found in the federal cause of action, and whether such burden, if any, "is inconsistent in both design and effect" with the goals of the federal statute. *Felder*, 487 U.S. at 141, 108 S. Ct. at 2308. The second prong is whether the application of the state rule is "outcome-determinative," such that it would "frequently and predictably produce different outcomes" depending on whether the federal claim is brought in state or federal court. *Id.* at 138, 153, 108 S. Ct. at 2307, 2314; *see also Johnson*, 520 U.S. at 920–21, 117 S. Ct. 1805–06. We therefore examine how rule 68.03 functions in a FELA action under both of these prongs.

### 1. *Burdening the Federal Right*

BNSF argues that rule 68.03 is preempted by FELA because the double-cost provision increases both the employee-plaintiff's recovery and the railroad-defendant's

9

liability as compared to litigation in federal court. Relying heavily on *Monessen*, BNSF contends that the double-cost mechanism burdens the exercise of the federal right under FELA because it allows a FELA plaintiff to recover additional amounts constituting "a significant portion of a[] FELA plaintiff's total recovery," which are "too substantial a part of a defendant's potential liability under the FELA" to be deemed procedural. *See* 486 U.S. at 335, 336, 108 S. Ct. at 1842, 43.

BNSF's reliance upon *Monessen* is misplaced. The state rule at issue in *Monessen* allowed Pennsylvania state courts to add ten percent prejudgment interest to a compensatory damage award for a FELA claim. *Id.* at 333, 108 S. Ct. at 1841. Drawing from *Dice*, the Supreme Court held that because prejudgment interest "is normally designed to make the plaintiff whole" and would constitute a "significant portion of a FELA plaintiff's total recovery," the interest was thus "too substantial a part of a defendant's potential liability under the FELA for this Court to accept a State's classification of such a provision . . . as a mere 'local rule of procedure.'" *Id.* at 335–36, 108 S. Ct. at 1842–43 (citing *Dice*, 342 U.S. at 363, 72 S. Ct. at 315). The Court reasoned that in the past seven decades, federal and state courts had held "with virtual unanimity" that "prejudgment interest is not available under FELA." *Id.* at 338–39, 108 S. Ct. at 1844 (citations omitted). The Court therefore concluded that because prejudgment interest affected the measure of compensatory damages in FELA actions, and FELA did not provide for recovery of prejudgment interest, the Pennsylvania rule was preempted by FELA. *Id.* at 342, 108 S. Ct. at 1846.

10

The reasoning underlying *Monessen* was that prejudgment interest is a part of damages, which are "inseparably connected with the right of action" under FELA. *Id.* at 335, 108 S. Ct. at 1842. This holding is consistent with our case law distinguishing prejudgment interest, which is considered to be part of compensatory damages, from costs and disbursements, which do not compensate for injury. *See Lienhard v. State*, 431 N.W.2d 861, 864–65 (Minn. 1988) (distinguishing prejudgment interest, which is "directly proportional to the magnitude of damages sustained by the claimant," from costs and disbursements, which "are not part of the claim for compensation of personal injury"); *see also State ex rel. Burnquist v. Miller Home Dev.*, 243 Minn. 1, 7, 65 N.W.2d 900, 904 (1954) (holding that "costs and disbursements" are a "procedural element" separate from the concept of "just compensation" under the Minnesota Constitution).

Unlike prejudgment interest, an award of costs and disbursements under rule 68.03 does not add to the compensatory damages tied to the underlying FELA claim. Instead, rule 68.03 provides a cost-shifting mechanism that only takes effect after a party makes a settlement offer, the other party rejects that offer, *and* the offeror then receives a more favorable verdict than the offer. Minn. R. Civ. P. 68.03(b)(2). The cost-shifting mechanism is not connected to the amount of compensation due to the plaintiff under FELA, but rather is dependent upon the litigation conduct of the parties in making reasonable settlement demands and predicting jury verdicts.[4] BNSF acknowledges in its

---

[4] Other state rules that shift costs between parties have been applied in state-court litigation of federal claims. *See Eversole v. Consol. Rail. Corp.*, 551 N.E.2d 846, 855 (Ind. Ct. App. 1990) ("The taxing of costs is not a right inextricably tied to Eversole's rights under FELA."); *Duello v. Bd. of Regents*, 583 N.W.2d 863, 869-70 (Wis. Ct. App.

brief that "[a]n award of enhanced costs under Rule 68.03(b)(2) is not compensatory—it does not make the plaintiff whole." If double costs under rule 68.03 are not "designed to make the plaintiff whole," are not "a part of the actual damages sought to be recovered," and do not increase the amount of compensation a plaintiff may ultimately be owed under FELA, *Monessen*, 486 U.S. at 335, 108 S. Ct. at 1842, then the reasoning of *Monessen* does not apply to bar the application of rule 68.03 in a FELA action in Minnesota state courts.

Furthermore, we reject BNSF's argument that rule 68.03 is unconstitutional under the Supremacy Clause merely because it imposes an additional litigation cost upon a party in a FELA case. If monetary liability shifted between parties for litigation conduct constitutes a "windfall" forbidden by FELA, it would follow that any award of attorney fees and costs as sanctions for litigation misconduct by a party trying a FELA claim in state court would be forbidden under *Monessen*. This would include misrepresentation sanctions under Minn. R. Civ. P. 11.03 and sanctions under Minn. R. Civ. P. 37.02 for a party's failure to cooperate with discovery. Under BNSF's position, this court would be prevented from imposing appellate sanctions under Minn. R. Civ. App. P. 138, which is a rule we have previously utilized against a defendant in a FELA action for appealing

---

1998) (applying Wisconsin statute-shifting costs based on rejected settlement offers to Fair Labor Standards Act claim). And state postjudgment interest rules, which, similar to litigation costs, are not tied to the underlying claim but rather to conduct of the parties after litigation, are routinely applied in FELA actions in state courts. *See Louisville & Nashville R.R. v. Stewart*, 241 U.S. 261, 263, 36 S. Ct. 586, 588 (1916) (allowing state appeals court to add ten percent postjudgment interest to judgment); *Lockley v. CSX Transp. Inc.*, 66 A.3d 322, 327–28 (Pa. Super. Ct. 2013); *Jacobs v. Dakota, Minn. & E. R.R.*, 806 N.W.2d 209, 216 (S.D. 2011); *Weber v. Chi. & Nw. Transp. Co.*, 530 N.W.2d 25, 30–32 (Wis. Ct. App. 1995).

merely to delay enforcement of a district court judgment. *Melin v. Burlington Northern R.R. Co.*, 401 N.W.2d 418, 420 (Minn. App. 1987). Such a result is incompatible with the "great latitude" our supreme court has to "establish the structure and jurisdiction of [its] own courts." *Howlett*, 496 U.S. at 372, 110 S. Ct. at 2441.

BNSF also argues that the award of double costs to injured employees under rule 68.03 is just another form of punitive damages, which are not allowed under FELA. *See Kozar v. Chesapeake & Ohio Ry.*, 449 F.2d 1238, 1243 (6th Cir. 1971). But, as was recognized in *S.A. Healy Co. v. Milwaukee Metro. Sewerage Dist.*, the doubling of costs is "a sanction . . . for turning down reasonable settlement demands," which is "entirely separate from the judgment" and more like "an award of attorney's fees . . . as a sanction for filing a frivolous suit." 60 F.3d 305, 308 (7th Cir. 1995). Punitive damages, on the other hand, are designed "to punish the perpetrator, to deter repeat behavior and to deter others from engaging in similar behavior" that caused the plaintiff's injury. *Jensen v. Walsh*, 623 N.W.2d 247, 251 (Minn. 2001). These damages represent a portion of "the indemnity recoverable by a person who has sustained an injury," and are therefore barred in FELA actions because they are not a part of permissible compensatory damages under FELA. *Kozar*, 449 F.2d at 1240. Rule 68.03 is easily distinguished from punitive damages because the genesis of the double-cost award is a rejected settlement offer, which necessarily takes place after any alleged misconduct. Cost shifting under the rule is not intended to punish a defendant for its pre-trial conduct in connection with a plaintiff's injury, but instead to encourage good-faith settlement offers between parties.

13

The rule sanctions litigants for *litigation conduct* and has no connection to a defendant's injury-causing conduct.

Finally, rule 68.03 does not "conflict[] in both its purpose and effects" with the objectives of FELA. *See Felder*, 487 U.S. at 138, 108 S. Ct. at 2307. Rule 68.03 was recently revised to "encourage[e] the settlement of litigation" by "remov[ing] surprises" in settlement negotiations and to "provid[e] incentives for both claimants and parties opposing claims." Minn. R. Civ. P. 68 2008 advisory comm. cmt. The rule's restructuring created parity between parties by allowing a plaintiff to recover double costs, as the award of single costs under the previous version of the rule merely duplicated taxable costs available to a plaintiff under rule 54 and provided no settlement incentive for defendants. *See id.* A rule explicitly re-designed to encourage defendants to settle with plaintiffs is entirely consistent with the purpose of FELA:

> [FELA] was designed to put on the railroad industry some of the cost for the legs, eyes, arms, and lives which it consumed in its operations. Not all these costs were imposed, for the Act did not make the employer an insurer. . . . The purpose of the Act was to . . . relieve men who by the exigencies and necessities of life are bound to labor from the risks and hazards that could be avoided or lessened by the exercise of proper care on the part of the employer in providing safe and proper machinery and equipment with which the employee does his work.

*Wilkerson v. McCarthy*, 336 U.S. 53, 68, 69 S. Ct. 413, 420–21 (1949) (Douglas, J., concurring) (quotation omitted). As the *Felder* Court noted, "[s]tates may make the litigation of federal rights as congenial as they see fit—not as a *quid pro quo* for compliance with other, uncongenial rules, but because such congeniality does not stand

14

as an obstacle to the accomplishment of Congress' goals." *Felder*, 487 U.S. at 151, 108 S. Ct. at 2313. Minnesota's decision to encourage settlement makes litigation of FELA cases more congenial and is fully consistent with the goals of FELA.

These considerations, coupled with the presumption against preemption, lead us to conclude that rule 68.03 does not impermissibly burden the federal right created by FELA.

### 2.     *Outcome-Determinative*

The second prong of our preemption analysis requires us to determine whether rule 68.03's "enforcement in [FELA] actions will frequently and predictably produce different outcomes" in FELA litigation "based solely on whether the claim is asserted in state or federal court." *See Felder*, 487 U.S. at 138, 108 S. Ct. at 2307.

BNSF argues that this case would have proceeded differently if it had been brought in federal court and utilized the federal analogue to rule 68.03, which operates solely in favor of defendants. Under Fed. R. Civ. P. 68, if a defendant-offeror wins a judgment in federal court, it does not recover federal rule 68 costs. *Delta Air Lines, Inc. v. August*, 450 U.S. 346, 351–52, 101 S. Ct. 1146, 1149–50 (1981). But, if a plaintiff wins a judgment less favorable than the defendant's offer, the federal rule has the same "doubling" effect as Minn. R. Civ. P. 68.03(b)(1): plaintiff cannot recover its post-offer costs and must pay the post-offer costs of defendant. *See Herrington v. Cnty. of Sonoma*, 12 F.3d 901, 906–07 (9th Cir. 1993). The federal rule does not provide any corresponding incentive for plaintiffs to make offers to defendants. *See Delta Air Lines*, 450 U.S. at 350, 101 S. Ct. at 1149 ("The Rule has no application to offers made by the

plaintiff."). BNSF correctly notes that Boyd, as plaintiff, could not have recovered double costs if he had brought suit in federal court.

The question then becomes whether the unavailability of double costs for plaintiffs in federal court is a sufficient difference in outcome to warrant preemption. Both *Felder* and *Johnson* analyzed the difference in outcomes between state and federal courts, in the context of § 1983 actions, because different outcomes would show that application of the state rule was "inconsistent with [the] federal interest in intrastate uniformity" underlying § 1983. *Felder*, 487 U.S. at 153, 108 S. Ct. at 2314; *see also Johnson*, 520 U.S. at 920, 117 S. Ct. at 1806. Because FELA, like § 1983, requires "uniform application throughout the country" in order to "effectuate its purposes," *Dice*, 342 U.S. at 361, 72 S. Ct. at 314, we must determine whether the outcome of a FELA claim in a Minnesota state court under rule 68.03 is sufficiently different from the outcome of a FELA claim in federal court that rule 68.03 is inconsistent with the federal interest in uniformly applying FELA.

In *Johnson*, the Supreme Court explained that the difference in "outcome" requiring preemption of a state rule referred to a difference in "the *ultimate disposition* of the case" between federal and state courts. 520 U.S. at 921, 117 S. Ct. at 1806 (emphasis added). Consistent with this principle, the Supreme Court has held state rules to be preempted when such rules significantly affected state-court adjudication of the underlying rights of the federal statute, typically by defeating a plaintiff's cause of action when such defeat would not have occurred in federal court. *See, e.g.*, *Haywood v. Drown*, 556 U.S. 729, 740–42, 129 S. Ct. 2108, 2117–18 (2009) (holding state statute

16

that prevented § 1983 suits seeking damages relief against correctional officers to be preempted); *Felder*, 487 U.S. at 152–53, 108 S. Ct. at 2314 (holding that the state notice-of-claim statute allowed state courts to decline consideration of § 1983 claims and therefore "predictably alter[ed] the outcome of § 1983 claims"); *Dice*, 342 U.S. at 362, 72 S. Ct. at 314–15 (concluding that state law regarding fraud defense that was "so harsh" as to "defeat a railroad employee's claim" could not be applied in FELA case); *Brown*, 338 U.S. at 295–96, 70 S. Ct. at 106–107 (holding that state pleading rule under which plaintiff's claim was dismissed "denied a right of trial granted him by Congress" and could not be used to defeat the federal right under FELA); *Garrett v. Moore-McCormack Co.*, 317 U.S. 239, 249, 63 S. Ct. 246, 253 (1942) (holding that state burden-of-proof rule was not a "mere incident of form of procedure" and denied admiralty plaintiff "the benefit of the full scope of [federally created] rights").

*Johnson* provides an example of a state rule that did *not* produce a different "ultimate disposition of the case" than would otherwise occur in federal court. *See* 520 U.S. at 921, 117 S. Ct. at 1806. The challenged state rule prevented state-government defendants from obtaining interlocutory appellate review of the district court's denial of their qualified-immunity defense in a § 1983 proceeding in state court. *Id.* at 913–14, 117 S. Ct. at 1802. The defendants argued that because federal courts allowed interlocutory appeal of such a denial, preemption was needed to avoid different outcomes based on the choice of forum. *See id.* at 918, 117 S. Ct. at 1804. But, this appellate procedural rule did not prevent the state appellate court from hearing the defendants' appeal on the merits; rather, it merely meant that their claim would be reviewed after

17

final judgment, not before trial as it would be in the federal system. *Id.* at 921, 117 S. Ct. at 1806. The Court therefore held that "postponement of the appeal until after final judgment will not affect the ultimate outcome of the case," and the rule was therefore not preempted by the federal cause of action. *Id.*

Here, the taxation of double costs likewise does not affect the "ultimate disposition" of the FELA suit. *See id.* "Disposition" is "a final settlement or determination" of a case. *Black's Law Dictionary* 572 (10th ed. 2014). Even with rule 68.03 in place, Minnesota state courts ultimately dispose of FELA actions the same way a federal district court would. Rule 68.03 does not change how the merits of a FELA claim are adjudicated or modify any accompanying damages. The only difference between the two forums is the potential distribution of litigation costs between parties if rule 68.03 comes into effect. And that difference is no sure thing; neither plaintiffs nor defendants are entitled to double costs under rule 68.03 as a matter of course. Each party controls whether to make a settlement offer. After that, the recovery of double costs is contingent on two things: (1) the rejection of an offer; and (2) a jury verdict more favorable than the offer. While the notice-of-claim statute in *Felder* "frequently and predictably produce[d] different outcomes" in state court, 487 U.S. at 138, 108 S. Ct. at 2307, rule 68.03 is not similarly frequent or predictable simply by virtue of the fact that it was triggered by the parties' litigation conduct in this case. Because rule 68.03 does not affect the "ultimate disposition" of state-court FELA claims, much less do so "frequently" or predictably," it is not outcome-determinative under Supreme Court precedent.

18

BNSF also appears to argue that rule 68.03 is outcome-determinative, and therefore substantive, by citing the Seventh Circuit's decision in *S.A. Healy*. But, *S.A. Healy* can be distinguished from the present case. It is an *Erie* decision dealing with choice-of-law in a federal diversity case, an entirely different matter than the preemption question presented to us here.

The *Erie* doctrine is used by federal courts considering state-law claims under their diversity jurisdiction, for which the federal courts are directed to "apply state substantive law and federal procedural law." *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427, 116 S. Ct. 2211, 2219 (1996). But, as in the preemption context, "[t]he line between procedural and substantive law is hazy." *Erie R.R. v. Tompkins*, 304 U.S. 64, 91, 58 S. Ct. 817, 828 (1938) (Reed, J., concurring in part). Federal courts only "wade into *Erie*'s murky waters" in deciding whether a state law should be applied if "the federal rule is inapplicable or invalid." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398, 130 S. Ct. 1431, 1437 (2010). If those murky waters must be entered because there is no federal rule of procedure on point, federal courts utilize the *Erie* choice-of-law analysis, which examines whether failure to apply the state law in federal court would "significantly affect the result of . . . litigation." *Gasperini*, 518 U.S. at 427, 116 S. Ct. at 2219 (quotation omitted). As expounded by the Supreme Court, this *Erie* outcome analysis includes consideration of the "twin aims of the *Erie* rule: discouragement of forum-shopping and avoidance of inequitable administration of the laws." *Id.* at 428, 116 S. Ct. at 2220 (quotation omitted). If application of the state law would abate forum shopping and would not be "likely to impair the integrity of federal

19

procedure," the state law can be used in the federal diversity action. *S.A. Healy*, 60 F.3d at 310–11.

The *Erie* choice-of-law analysis is inapplicable to the preemption issue we face in the present case for a number of reasons. The issue before the court in *S.A. Healy* was whether to apply a Wisconsin cost-shifting statute similar to rule 68.03 in a federal diversity action involving state-law claims. *Id.* at 307–08. Unlike the court in *S.A. Healy*, we must apply the presumption against preemption. *Johnson*, 520 U.S. at 918, 117 S. Ct. at 1805. The holding in *S.A. Healy* did not depend on preemption concepts because the Seventh Circuit found "no direct conflict between the Wisconsin rule . . . and any rule of federal procedure" when the Wisconsin rule was applied to plaintiffs, as Fed. R. Civ. P. 68 only operates in favor of defendants. 60 F.3d at 310, 312. And, when the *S.A. Healy* court proceeded to consider choice-of-law principles under *Erie*, it compared the operation of two rules: the Wisconsin cost-shifting rule and Fed. R. Civ. P. 68. *Id.* Neither of those rules is at issue here, as BNSF is arguing that Minn. R. Civ. P. 68.03 is preempted by FELA. We are not analyzing whether Fed. R. Civ. P. 68 conflicts with the Minnesota rule because, like the federal interlocutory appeal right in *Johnson*, federal rule 68 "is a federal procedural right that simply does not apply in a nonfederal forum." *See* 520 U.S. at 921, 117 S. Ct. at 1806.

Finally, the holding in *S.A. Healy* was based upon application of an *Erie* forum-shopping test that has never been used in preemption analysis. The Seventh Circuit held that the Wisconsin rule favored plaintiffs and was therefore "so likely to dictate outcomes that it [would] cause a lot of forum shopping . . . unless it [was] made applicable to

diversity cases." *S.A. Healy*, 60 F.3d at 310–11. But, we are not aware of any Supreme Court opinion that applied an *Erie*-type analysis of forum shopping in determining whether federal substantive laws preempt neutral state procedural rules in *state-court litigation*. We therefore decline to overstep the bounds of our authority as an error-correcting court by assessing the forum-shopping implications of rule 68.03. *See Lake George Park, L.L.C. v. IBM Mid-America Emps. Fed. Credit Union*, 576 N.W.2d 463, 466 (Minn. App. 1998), *review denied* (Minn. June 17, 1998). And, even if we were allowed to consider the issue, the parties in this case did not present any arguments or evidence, either here or at the district court, regarding the potential forum-shopping effect rule 68.03 might have when compared to federal litigation that utilizes Fed. R. Civ. P. 68. We cannot consider an issue without argument to that effect from the parties. *See Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988); *Melina v. Chaplin*, 327 N.W.2d 19, 20 (Minn. 1982) ("This issue was not argued in the briefs and accordingly must be deemed waived.").

In sum, BNSF bears a "heavy burden of persuasion" in arguing that FELA preempts rule 68.03, *Johnson*, 520 U.S. at 918, 117 S. Ct. at 1805, and has failed to satisfy that burden and overcome the presumption against preemption. Applying rule 68.03 to FELA claims in Minnesota state court does not burden the federal right created by FELA, or affect the "ultimate disposition" of FELA claims as compared to federal litigation. To hold that FELA preempts rule 68.03 would be squarely at odds with "respect" for "principles that are fundamental to a system of federalism," which is "at its apex when we confront a claim that federal law requires a State to undertake something

21

as fundamental as restructuring the operation of its courts." *See id.* at 922, 117 S. Ct. at 1807 (quotation omitted). We hold that Minn. R. Civ. P. 68.03 can be applied to FELA claims adjudicated in state court.

**II.**

BNSF challenges the district court's grant of costs for expert-witness fees. "The trial court does not have discretion to deny costs and disbursements to the prevailing party," but does use its discretion to determine what costs are reasonable. *Quade & Sons Refrigeration, Inc. v. Minn. Mining & Mfg. Co.*, 510 N.W.2d 256, 260 (Minn. App. 1994), *review denied* (Minn. Mar. 15, 1994). The district court can "allow such fees or compensation [for expert witnesses] as may be just and reasonable." Minn. Stat. § 357.25 (2012). "[A] discretionary award of expert witness fees will be disturbed only in cases where abuse of discretion is apparent." *Carpenter v. Mattison*, 300 Minn. 273, 280, 219 N.W.2d 625, 631 (1974). BNSF argues that the district court abused its discretion in its award of expert witness fees for the work of Boyd's experts Blackwell and Dr. Andres because it failed to provide sufficient reasoning supporting its fee award.

BNSF argues that Blackwell's fee should have been reduced because most of Blackwell's preliminary report related to the common-law negligence claim that Boyd did not pursue at trial. But, far from "not articulat[ing] any reasoned basis for awarding" the fees associated with Blackwell, the district court found that Blackwell's time spent reviewing materials, testifying, and conducting a site inspection were worthy of allowing Boyd to recover all fees associated with Blackwell. The district court apparently found that the work conducted in association with Boyd's common-law negligence claim was

22

slight in comparison to everything else Blackwell did for the claims on which Boyd succeeded. This finding was within the district court's discretion.

BNSF also challenges the district court's grant of witness fees for Dr. Andres on the basis that the district court "did not make an adequate record to explain how or why" fees were granted. Noting that Dr. Andres testified relative to three separate issues, the district court specifically found that because there were some limitations on some of Dr. Andres's testimony regarding footwear, his fees should be reduced by one-third. But, the district court granted two-thirds of the claimed fees relative to Dr. Andres's other opinions on ergonomics and the Mertens bar. While BNSF may be unhappy with the district court's explanation, the district court detailed its reasons for reducing costs associated with Dr. Andres's expert testimony. The district court decided that reducing Dr. Andres's fees by one-third was sufficient to account for the excluded testimony. This decision was within the district court's discretion and does not constitute an "apparent" abuse of discretion. *See id.*

BNSF also challenges the district court's grant of fees for Blackwell and Dr. Andres because the opinions to which they testified were not timely disclosed. BNSF argues that ordering payment of these fees would not be "just [or] reasonable" within the meaning of Minn. Stat. § 357.25 because it "would improperly encourage parties to violate the rules and trial court orders requiring timely expert disclosures." But BNSF fails to cite any authority providing that district court judges abuse their discretion and misapply section 357.25 in awarding expert costs when those experts' opinions were not

23

timely disclosed.  The grant of fees for expert testimony is within the district court's discretion, and the district court did not abuse that discretion.

## D E C I S I O N

Because rule 68.03 is not preempted by FELA, the district court did not err in awarding Boyd double costs under the rule.  Furthermore, the district court did not abuse its discretion when awarding expert-witness fees to Boyd.

**Affirmed.**

**RODENBERG**, Judge (concurring in part, dissenting in part)

I concur with part II of the majority opinion, but I respectfully dissent from part I. In my view, awarding respondent $62,584.48 more than his actual costs and disbursements under Minn. R. Civ. P. 68.03(b)(2) is plainly substantive within the meaning of well-established federal caselaw. The windfall award of amounts never actually disbursed or paid by a prevailing FELA plaintiff has not been authorized by Congress and conflicts with the principles of uniformity sought to be advanced by FELA. The judgment against appellant should be reduced by $62,584.48.

The majority accurately observes in part I.C.1. that rule 68.03(b)(2) designedly provides for an award to a prevailing plaintiff of amounts over and above the plaintiff's actual costs and disbursements, as a mechanism for inducing a defendant to settle. *See* Minn. R. Civ. P. 68.04, 2008 cmt. ("Rule 68 is extensively revamped . . . to make it more effective in its *purpose of encouraging the settlement of litigation.*" (emphasis added)). The district court's award of the $62,584.48 in question would doubtless be proper were this not a FELA case. But in this FELA case, the wisdom of Minnesota's provision is not the issue. Instead, the issue on appeal is the straightforward one accurately identified by the district court: "[W]hether the enhancement of costs under Rule 68 is a procedural rule or substantive law" under controlling caselaw. *See St. Louis Sw. Ry. v. Dickerson*, 470 U.S. 409, 411, 105 S. Ct. 1347, 1348 (1985) (stating that state procedural rules and federal substantive rules apply in FELA cases).

"State courts are required to apply federal substantive law in adjudicating FELA claims," *Monessen Sw. Ry. v. Morgan*, 486 U.S. 330, 335, 108 S. Ct. 1837, 1842 (1988),

and state rules must yield to FELA when "enforcement of [state or local rules] stand[s] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" in creating FELA, *see Felder v. Casey*, 487 U.S. 131, 138, 108 S. Ct. 2302, 2306-07 (1988) (quotation omitted).

A FELA action can be brought in *any* federal district or state court. 45 U.S.C. § 56 (2012). Because of this forum-selection right, the United State Supreme Court has consistently required that federal substantive law, broadly defined, must apply to FELA claims. "[O]nly if federal law controls can the federal Act be given that uniform application throughout the country essential to effectuate its purposes." *Dice v. Akron, Canton & Youngstown Ry.*, 342 U.S. 359, 361, 72 S. Ct. 312, 314 (1952); *see also New York Central & Hudson R.R. Co. v. Tonsellito*, 244 U.S. 360, 362, 37 S. Ct. 620, 621 (1917) (holding that FELA is "comprehensive and also exclusive in respect of a railroad's liability for injuries suffered by its employees while engaging in interstate commence" (quotation omitted)). So important is the requirement of uniformity that, in *Dice,* the United States Supreme Court held that, in FELA cases, the State of Ohio must provide a right to a trial by jury of all issues in its court of common pleas, a court of equity in which there previously existed no right of trial by jury. 342 U.S. at 363, 72 S. Ct. at 315.

In *Monessen*, all nine Justices of the United States Supreme Court joined in part II.A. of the opinion, holding that prejudgment interest under rule 238 of the Pennsylvania Rules of Civil Procedure is substantive and not procedural. 486 U.S. at 334-36, 108 S. Ct. at 1842-43. "[C]haracterizing Rule 238 as nothing more than a procedural device to

relieve court congestion" was insufficient justification to consider the state rule as procedural. *Id.* at 336, 108 S. Ct. at 1843. Observing that "federal and state courts have held with virtual unanimity over more than seven decades that prejudgment interest is not available under FELA," *id.* at 338, 108 S. Ct. at 1844, and that in order for the remedy of prejudgment interest to be available to a prevailing FELA plaintiff, "Congress must expressly so provide," *id.* at 339, 108 S. Ct. at 1845, the Supreme Court determined that the Pennsylvania "procedural" provision is preempted by FELA. The Supreme Court held that the award of $26,712.50 in prejudgment interest was "too substantial a part of [the] defendant's potential liability under the FELA" to be properly characterized as procedural. *Id.* at 336, 108 S. Ct. at 1843.

That prejudgment interest is computed based on the size of the damage award and the enhanced judgment allowed under rule 68.03(b)(2) is computed based on the prevailing plaintiff's costs and disbursements is all the more reason that Minnesota's rule must yield to FELA preemption. In effect, and as applied here, rule 68.03(b)(2) is purely punitive against a party who opted to try the case rather than settle it. The award under rule 68.03(b)(2) bears no relationship whatever to the damages authorized by Congress to be recovered under FELA. *See Am. R.R. of Porto Rico v. Didricksen*, 227 U.S. 145, 149-150, 33 S. Ct. 224, 225 (1913) (holding that damages in a FELA action are limited "strictly to the financial loss thus sustained," overturning a jury award for the loss of "society and companionship"); *see also Local 20, Teamsters, Chauffeurs & Helpers Union v. Morton*, 377 U.S. 252, 260-61, 84 S. Ct. 1253, 1259 (1964) (holding that

punitive damages could not be granted because punitive damages are a matter of substantive law and "substantive state law . . . must yield to federal limitations").

Interpreting *Monessen* as preempting the award of $62,584.48 to respondent in this case also comports with common sense and the black-letter definitions of substance and procedure. *Black's Law Dictionary* defines "substantive law" as "[t]he part of the law that creates, defines and regulates the rights, duties and powers of parties." 1567 (9th ed. 2009). "Procedure" is defined as "[t]he judicial rule or manner for carrying on a civil lawsuit." *Id.* at 1323. Procedure is how a thing is done. Substantive law is the thing that is done. Rule 68.03(b)(2) operates to award a judgment for amounts that Congress has not authorized under FELA. This is not a case of "how." It is a case of "what." And the thing that rule 68.03(b)(2) authorizes is inconsistent with FELA.

The majority mischaracterizes rule 68.03(b)(2) as a cost-shifting provision.[5] It is no such thing. Rule 68.03(b)(2) provides that a "defendant-offeree must pay, *in addition to the costs and disbursements* to which the plaintiff-offeror is entitled under Rule 54.04,

---

[5] The majority cites *Eversole v. Consol. Rail Corp.*, 551 N.E.2d 846, 855 (Ind. Ct. App. 1990) in support of its approach distinguishing litigation conduct from compensatory damages and suggesting that state law inconsistent with FELA may be applied to litigation conduct. But *Eversole* involves the shifting of out-of-pocket costs *actually incurred*. And taxation of *actual* costs is undoubtedly procedural. *Eversole* says nothing about the issue before us here, the taxation of additional phantom costs, and it utterly fails to support the majority's assertion that state law inconsistent with FELA may be applied in a FELA case to discourage disfavored litigation conduct. That was the issue in *Monessen*, and the United States Supreme Court resolved the issue. *Eversole* applies the *Monessen* directive that whether a state law provision may be applied in a FELA case depends entirely upon whether the state-law provision at issue is one of substance or procedure, a directive that the majority refuses to apply here. Likewise, *Duello v. Bd. of Regents*, 583 N.W.2d 863 (Wis. Ct. App. 1998), a Fair Labor Standards Act case involving the denial of attorney fees to a prevailing plaintiff, has no application here.

*an amount equal to the plaintiff-offeror's costs and disbursements incurred after service of the offer.*" (Emphasis added.) Therefore, under the plain language of the rule, the $62,584.48 at issue here is *not* an award of costs and/or disbursements. It is an award of an *additional amount equal to the costs and disbursements* after a designated point in time—an additional amount never paid or disbursed by respondent. The rule creates and defines a right of recovery for a prevailing plaintiff and is substantive under *Monessen*.

*Monessen* held that Pennsylvania's prejudgment interest rule, in awarding $26,712.50 as prejudgment interest, was "too substantial a part of a defendant's potential liability under the FELA" to be accepted as procedural. 486 U.S. at 336, 108 S. Ct. at 1843. The majority opinion allows almost two-and-one-half times that amount, an amount the majority characterizes as "costs and disbursements" but an amount that was never actually paid or expended by appellant, to be awarded by way of a judgment that everyone agrees could not be obtained under federal law. Under *Monessen*, this is "too substantial a part of a defendant's potential liability under the FELA." *Id.* If such an amount is to be awarded, "Congress must expressly so provide." *See id.* at 339, 108 S. Ct. at 1844. And Congress has not done so.

The majority seems to doubt the "potential forum-shopping effects" of the application of Minnesota's rule 68.03(b)(2). But the majority acknowledges, as it must, that FELA requires "uniform application throughout the country" to "effectuate its purposes," *Dice*, 342 U.S. at 361, 72 S. Ct. at 314, and that if a rule "will frequently and predictably produce different outcomes . . . based solely upon whether the claim is asserted in state or federal court," application of the state rule is prohibited, *Felder*, 487

U.S. at 138, 108 S. Ct. at 2307.[6]  Since FELA plaintiffs are authorized by the federal statute to sue in any state or federal court, 45 U.S.C. § 56, and because Minnesota's courts today become the *only* place where a prevailing FELA plaintiff can tax phantom costs and disbursements never paid or incurred, it cannot be doubted that forum-shopping will result.[7]

Part I of the majority opinion irreconcilably conflicts with governing federal caselaw, and I must therefore dissent from that part of the majority's opinion.

---

[6] The majority correctly notes that "forum shopping" is not specifically briefed as a separate issue on appeal.  But the central importance of uniformity in FELA cases arises from the forum-selection right of plaintiffs.  And the outcome of the case should not depend upon the forum selected.  *See S.A. Healy Co. v. Milwaukee Metro. Sewerage Dist.*, 60 F. 3d 305 (7th Cir. 1995) (discussing the significance of forum-shopping considerations in the context of determining whether a law is substantive or procedural).

[7] And, of course, uniformity has nothing to do with whether the substantive rule under examination benefits a plaintiff or a defendant.  Whether Minnesota's rule is "fairer" than the federal rule is of no consequence here.  Uniformity requires that the same substantive law apply to prevailing plaintiffs regardless of the court in which suit is brought.  FELA requires uniformity of outcome—not, as the majority seems to think, the outcome that most favors a plaintiff or the outcome that we might think is better or fairer.  That Minnesota's rule advances the interests of prevailing plaintiffs and produces a result that cannot be replicated under federal law is all the more indication that rule 68.03(b)(2) may not be applied to a FELA case consistent with the requirement of uniformity.