STATE OF MINNESOTA

IN SUPREME COURT

A14-0277

Court of Appeals                                                            Wright, J.
                                                          Took no part, Hudson, J.

Terry Boyd,

                    Respondent,

vs.                                                            Filed: January 27, 2016
                                                          Office of Appellate Courts

BNSF Railway Company,

                    Appellant.

_____


Christopher J. Moreland, Bremseth Law Firm, P.C., Minnetonka, Minnesota, for respondent.

Timothy R. Thornton, Jonathan P. Schmidt, Leah Ceee O. Boomsma, Briggs and Morgan, P.A., Minneapolis, Minnesota; and

Timothy K. Masterson, R. John Wells, Sweeney & Masterson, P.A., Saint Paul, Minnesota, for appellant.

_____

S Y L L A B U S

1.     When determining whether the Federal Employers' Liability Act (FELA), 45 U.S.C. §§ 51-60 (2012), preempts a state law in a state court proceeding, a court must apply the substantive-procedural test of FELA precedent.

2.     Because the taxation of double costs pursuant to Minn. R. Civ. P. 68.03(b)(2) is substantive and not authorized by federal law, it is preempted by FELA.

1

Accordingly, Minn. R. Civ. P. 68.03(b)(2) does not apply in state court FELA proceedings.

Reversed and remanded.

O P I N I O N

WRIGHT, Justice.

This appeal arises from Terry Boyd's lawsuit against his former employer, BNSF Railway Company (BNSF), under the Federal Employers' Liability Act (FELA), 45 U.S.C. §§ 51-60 (2012), for injuries incurred on the job. Following a jury verdict and award against BNSF, the Hennepin County District Court ordered appellant BNSF to pay "double costs" to respondent Terry Boyd pursuant to Minn. R. Civ. P. 68.03(b)(2). Rule 68.03(b)(2) permits a plaintiff to recover additional costs and disbursement incurred after an offer is rejected by a defendant and the relief awarded is less favorable to the defendant than the rejected offer. BNSF appealed, and the court of appeals affirmed the double-costs award. We granted BNSF's petition for review to consider whether FELA preempts the application of Rule 68.03(b)(2) in a state court FELA action. We conclude that because double costs are substantive, rather than procedural, and are not authorized by federal law, FELA preempts the application of Rule 68.03(b)(2) in this state court action. We, therefore, reverse the decision of the court of appeals and remand to the district court for entry of an amended judgment consistent with this opinion.

I.

FELA was enacted in 1908 to create national uniformity in personal injury actions brought by railroad employees against their employers, *Norfolk & W. Ry. v. Liepelt*,

2

444 U.S. 490, 493 n.5 (1980) (citing H.R. Rep. No. 1386, 60th Cong., 1st Sess., at 3 (1908)); *N.Y. Cent. R.R. v. Winfield*, 244 U.S. 147, 149-50 (1917), and to ensure that railroad workers can recover for their employers' negligence, *see Wilkerson v. McCarthy*, 336 U.S. 53, 68 & n.1 (1949) (Douglas, J., concurring) (citing H.R. Rep. No. 1386, at 2). State and federal courts share concurrent jurisdiction over FELA actions. 45 U.S.C. § 56.

After being injured in the course of his employment, Boyd filed a complaint against BSNF in Hennepin County District Court, alleging violations of FELA and other federal laws. Boyd later made a $275,000 settlement offer. BNSF rejected the offer, and the matter proceeded to trial. A jury awarded Boyd $610,954.61 in damages on his FELA claim, which the district court later reduced to $411,954.98. Boyd then sought costs and disbursements pursuant to Minn. R. Civ. P. 54.04(b) and requested "double costs" pursuant to Minn. R. Civ. P. 68.03(b)(2), which provides for an *additional* payment equal to the costs and disbursements incurred after the date of a rejected settlement offer. *See* Minn. R. Civ. P. 68.03(b)(2) ("[T]he defendant-offeree must pay, in addition to the costs and disbursements to which the plaintiff-offeror is entitled under Rule 54.04, an amount equal to the plaintiff-offeror's costs and disbursements incurred after service of the offer."). BNSF objected to the request for double costs under Rule 68.03(b)(2), arguing that double costs are a form of damages preempted by FELA. Following a hearing, the district court administrator taxed BNSF $152,537.16 in costs and disbursements, including $62,584.48 in double costs.

BNSF sought review by the district court, arguing that an award of double costs under Rule 68.03(b)(2) is preempted by FELA. *See* Minn. R. Civ. P. 54.04(e) (providing

3

that a party may appeal to the district court an order awarding costs and disbursements). The district court disagreed. Citing *Monessen Southwestern Railway v. Morgan*, 486 U.S. 330 (1988), which holds that FELA preempts state substantive law—but not state procedural law—in a state court FELA action, the district court compared double costs to the state prejudgment interest rule at issue in *Monessen*. Unlike prejudgment interest, the district court concluded, Rule 68.03(b)(2) double costs are not a form of damages and, therefore, the rule is procedural.

A divided panel of the court of appeals affirmed the district court's order taxing double costs. *Boyd v. BNSF Ry.*, 858 N.W.2d 797 (Minn. App. 2014). Relying on a different analysis than the district court, the court of appeals majority expressly declined to apply the substantive-procedural test of FELA precedent. *Id.* at 803 ("[P]reemption does not hinge upon whether rule 68.03 is characterized as 'substantive' or 'procedural.' "). Rather, the court of appeals relied on a field preemption test derived from *Felder v. Casey*, 487 U.S. 131 (1988). Concluding that Rule 68.03(b)(2) "does not burden the federal right created by FELA, or affect the 'ultimate disposition' of FELA claims" under the test articulated in *Felder*, the court of appeals held that Rule 68.03(b)(2) "can be applied to FELA claims adjudicated in state court." 858 N.W.2d at 810.[1] We granted BNSF's petition for review.

_____

[1]     The court of appeals dissent characterized cost doubling as a form of damages, which are substantive under *Monessen* and, therefore, preempted by FELA. *Boyd*, 858 N.W.2d at 812-13 (Rodenberg, J., concurring in part and dissenting in part) (stating that an "award under rule 68.03(b)(2) bears no relationship whatever to the damages authorized by Congress to be recovered under FELA" and constitutes " 'too substantial a

(Footnote continued on next page.)

II.

Whether FELA preempts Minn. R. Civ. P. 68.03(b)(2) presents a question of law, which we review de novo. *Kinworthy v. Soo Line R.R.*, 860 N.W.2d 355, 356 (Minn. 2015) (citing *Monessen*, 486 U.S. at 335).

As a threshold matter, we must decide whether the court of appeals employed the proper preemption test when determining that Rule 68.03(b)(2)'s double-costs provision applies to Boyd's FELA claim. There are three ways that a federal statute can preempt state law—express preemption, conflict preemption, or implied field preemption. *Arizona v. United States*, __ U.S. __, 132 S. Ct. 2492, 2500-01 (2012); *Martin ex rel. Hoff v. City of Rochester*, 642 N.W.2d 1, 10-11 (Minn. 2002). Field preemption is implied when congressional legislation has so fully occupied the field of an area of law that there is no room for state regulation. *Arizona*, __ U.S. at __, 132 S. Ct. at 2501; *Martin*, 642 N.W.2d at 11. More than 100 years ago, the United States Supreme Court held that FELA occupies the field of railroad employees' personal injury claims against their employers in interstate commerce. *See Mich. Cent. R.R. v. Vreeland*, 227 U.S. 59, 66 (1913) ("By this act Congress has undertaken to cover the subject of the liability of railroad companies to their employees injured while engaged in interstate commerce. This exertion of [the commerce] power which is granted in express terms must supersede all legislation over the same subject by the states."); *see also Winfield*, 244 U.S. at 151

---

(Footnote continued from previous page.)
part of [the] defendant's potential liability under the FELA' to be properly characterized as procedural" (alteration in original) (quoting *Monessen*, 486 U.S. at 336)).

("That [FELA] is comprehensive and also exclusive is distinctly recognized in repeated decisions of this court."). However, because state courts have concurrent jurisdiction over FELA claims, FELA preempts state *substantive* law—but not state *procedural* law—in state court FELA actions. *See Mondou v. N.Y., New Haven & Hartford R.R.*, 223 U.S. 1, 56-57 (1912) (holding that litigants may enforce FELA in state courts as a matter of right but also observing that state courts are free to apply their own "modes of procedure" to FELA cases); *see also Brown v. W. Ry. of Ala.*, 338 U.S. 294, 296 (1949) ("[W]hile state courts are without power to detract from 'substantive rights' granted by Congress in FELA cases, they are free to follow their own rules of 'practice' and 'procedure.' "); *Cent. Vt. Ry. v. White*, 238 U.S. 507, 511-12 (1915) ("As long as the question involves a mere matter of procedure . . . the state court can . . . follow [its] own practice . . . ."); *Kinworthy*, 860 N.W.2d at 357 ("When a plaintiff chooses to bring a FELA claim in state court . . . federal law governs all substantive matters, but procedural matters are subject to state procedural rules.").

The United States Supreme Court refined the substantive-procedural test into a two-step analysis in *Monessen*.[2] The first step in the *Monessen* analysis is to determine whether the state law is substantive or procedural. *See* 486 U.S. at 335. If the state law is substantive, the second step of the *Monessen* analysis is to determine whether federal law authorizes application of the state law in a FELA case. *See id.* at 336-39.

---

[2] We recently relied on *Monessen* to determine that FELA preempts Minnesota's post-verdict, prejudgment interest statute, which we determined was substantive. *Kinworthy*, 860 N.W.2d at 360. However, *Kinworthy* was released after the court of appeals' decision in this case.

6

When presented with BNSF's preemption arguments, the court of appeals expressly declined to rely on the substantive-procedural test of FELA precedent. *Boyd*, 858 N.W.2d at 803 ("Contrary to the arguments of the parties, preemption does not hinge upon whether rule 68.03 is characterized as 'substantive' or 'procedural.' Simply looking at rule 68.03 in a vacuum and choosing whether its operation looks more like 'substance' or 'procedure' would do nothing to aid our preemption analysis."). Rather, the court of appeals commenced its preemption analysis by considering each federal preemption doctrine in turn. *Id.* at 802-03. After finding no express or implied preemption, the court of appeals turned to a field preemption analysis, relying on *Felder v. Casey*, 487 U.S. 131 (1988), a case decided under 42 U.S.C. § 1983 (2012). *Boyd*, 858 N.W.2d at 804.[3]

The court of appeals erred by applying the *Felder* preemption analysis. Because the United States Supreme Court has consistently held that FELA preempts state substantive law, but not state procedural law, the *Felder* preemption analysis does not apply. *See, e.g., Brown*, 338 U.S. at 296; *New Orleans & Ne. R.R. v. Harris*, 247 U.S. 367, 372 (1918) (stating that in a FELA case, "the question of burden of proof is

---

[3]     In *Felder*, the United States Supreme Court held that a state notice statute was preempted by section 1983 when (1) the statute burdened a federal right created by section 1983 and (2) enforcement of the statute would "frequently and predictably produce different outcomes in federal civil rights litigation based solely on whether that litigation takes place in state or federal court." 487 U.S. at 141. Applying the *Felder* test, the court of appeals held that FELA does not preempt Rule 68.03(b)(2), because Rule 68.03(b)(2) neither burdens a federal right nor determines the outcome of litigation. *Boyd*, 858 N.W.2d at 808.

a matter of substance and not subject to control by laws of the several states").[4] The *Monessen* substantive-procedural analysis, not the *Felder* preemption analysis, is the correct framework to employ when analyzing whether a state law can be applied in a state court FELA action.

## III.

Having concluded that the *Monessen* two-part test is the correct preemption analysis to employ, we next determine whether FELA preempts Minn. R. Civ. P. 68.03(b)(2). Applying *Monessen*, we first assess whether Rule 68.03(b)(2) is substantive or procedural. 486 U.S. at 335; *see also Kinworthy*, 860 N.W.2d at 358 (discussing *Monessen*). If Rule 68.03(b)(2) is substantive, then we must determine whether federal law authorizes its application in a FELA action. *Monessen*, 486 U.S. at 336-39; *see also Kinworthy*, 860 N.W.2d at 358 (discussing *Monessen*).

## A.

Rule 68.03(b)(2) imposes additional costs on a defendant who refuses a plaintiff's settlement offer if "the relief awarded [to the plaintiff] is less favorable to the defendant" than the plaintiff's offer. Minn. R. Civ. P. 68.03 (b)(2). If the defendant rejected such an offer, then the defendant "must pay, in addition to the costs and disbursements to which

---

[4]    Boyd cites, and the court of appeals relied on, *Pikop v. Burlington Northern Railroad*, 390 N.W.2d 743 (Minn. 1986), to support the use of the *Felder* preemption analysis in a FELA case. *See Boyd*, 858 N.W.2d at 802-03. But the issue in *Pikop* was whether a separate *cause of action*—intentional infliction of emotional distress from a continued pattern of harassment in the workplace—was subsumed by FELA. 390 N.W.2d at 744-45. Because FELA was enacted to address physical injury, we held that emotional-distress claims were outside the scope of FELA. *Id.* at 755. Here, we address a Minnesota rule applied to a *FELA* cause of action, so *Pikop* is inapposite.

the plaintiff-offeror is entitled under Rule 54.04, an amount equal" to the costs and disbursements incurred after service of the plaintiff's offer. *Id.* Rule 68.03(b)(2) costs are "double" because the defendant is required to pay the plaintiff's costs and disbursements taxed pursuant to Rule 54.04 *and* a portion of those same costs again under Rule 68.03(b)(2). *See* Minn. R. Civ. P. 68.03(b)(2). The result here is that BNSF twice paid the costs Boyd incurred from the date of the settlement offer. There is no federal equivalent to Minnesota Rule 68.03(b)(2).[5]

With this framework in mind, we consider whether Rule 68.03(b)(2) is substantive or procedural. The United States Supreme Court has acknowledged that there is no "precise rule" to distinguish between a substantive law and a procedural law in the FELA context. *St. Louis Sw. Ry. Co. v. Dickerson*, 470 U.S. 409, 411 (1985). But it is apparent that the definition of "substantive" in FELA cases is expansive, encompassing state laws that by ordinary nomenclature would be regarded as "procedural." *See, e.g.*, *Brown*, 338 U.S. at 296 (holding that pleading rules are substantive); *see also* 20 Charles Alan Wright & Mary Kay Kane, *Federal Practice and Procedure* § 47 (2d ed. 2011) ("[T]his area of procedure has become so shrunken as to fall within the maxim *de minimis*."). Further, a state's designation of a rule as one of "procedure" is not dispositive of the substantive-

---

[5] Both Fed. R. Civ. P. 68 and Minn. R. Civ. P. 68.03(b)(1) impose post-offer costs on a *plaintiff* who refuses a defendant's settlement offer if the relief awarded is less favorable to the plaintiff than the defendant's offer. But—unlike the Minnesota rule—the Federal Rules of Civil Procedure do not impose double costs on a *defendant*. *Compare* Fed. R. Civ. P. 68(a) ("[A] party defending against a claim may serve on an opposing party an offer."), *with* Fed. R. Civ. P. 68(d) ("If the judgment that the offeree finally obtains is not more favorable than the unaccepted offer, the offeree must pay the costs incurred after the offer was made.").

procedural distinction under FELA. *See Monessen*, 486 U.S. at 336 (deciding that a Pennsylvania Rule of Civil Procedure is substantive). Nor is it dispositive that Rule 68.03(b)(2) is designed to foster settlement. *See id.* ("The Pennsylvania courts cannot avoid the application of federal law . . . by characterizing Rule 238 as nothing more than a procedural device to relieve court congestion.").

No federal court has addressed whether FELA preempts a state cost-doubling rule.[6] However, we conclude that the result of applying Rule 68.03(b)(2) in this FELA case—increasing BNSF's liability beyond Boyd's actual costs—will create a disparity in FELA cases based solely on whether the plaintiff's claim is brought in federal or state court. Here, the difference between bringing this FELA claim in state court compared to bringing the same claim in federal court was over $60,000 in double costs.[7] Our

---

[6] It is noteworthy, however, that one federal court has decided that state cost-doubling laws are substantive in the *Erie* context. *S.A. Healy Co. v. Milwaukee Metro. Sewerage Dist.*, 60 F.3d 305, 312 (7th Cir. 1995). The *Erie* doctrine requires a federal court to apply state substantive law, but federal procedural law, in a diversity case. *Hanna v. Plumer*, 380 U.S. 460, 465 (1965). Applying the *Erie* doctrine, the Seventh Circuit concluded that the State of Wisconsin's cost-doubling rule is substantive. *S.A. Healy Co.*, 60 F.3d at 312. Federal courts, however, have not used the *Erie* analytical framework in state court FELA cases. We too decline to import the *Erie* substantive-procedural test here. We simply observe that, because cost-doubling laws are substantive in the *Erie* context, federal courts are likely to conclude that cost-doubling laws are substantive in FELA cases.

[7] The parties have attempted to resolve the substantive-procedural issue by analyzing the relationship between double costs and damages, because the *Monessen* Court held that prejudgment interest is a form of "actual damages" and, therefore, substantive. 486 U.S. at 335. But the *Monessen* Court did not conclude that *only* rules of damages are substantive. Prior to *Monessen*, the United States Supreme Court had already decided that prejudgment interest is a form of "actual damages" and that damages

(Footnote continued on next page.)

10

conclusion that the remedy provided by Rule 68.03(b)(2) is substantive is consistent with the congressional intent of encouraging uniformity between federal and state court FELA cases. *Liepelt*, 444 U.S. at 493 n.5; *see also Dice v. Akron, Canton & Youngstown R.R.*, 342 U.S. 359, 361 (1952) ("[O]nly if federal law controls can [FELA] be given that uniform application throughout the country essential to effectuate its purposes."); *Kinworthy*, 860 N.W.2d at 357 (relying on principles of uniformity and the supremacy of federal law).

B.

Having concluded that cost doubling under Rule 68.03(b)(2) is substantive, we next address the second step of the *Monessen* analysis, which is to determine whether federal law allows double costs in FELA actions. To resolve this issue, *Monessen* directs us to look to the text of FELA first. 486 U.S. at 336. If FELA's text is silent, we consider the common law when FELA was enacted. *Id.* at 337; *see also Consol. Rail*

---

(Footnote continued from previous page.)
are substantive. *See id.* Thus, no further analysis was needed to determine that prejudgment interest was substantive.

Moreover, the United States Supreme Court has found other state laws that have no relationship to damages to be substantive in FELA cases. *See, e.g.*, *Dice v. Akron, Canton & Youngstown R.R.*, 342 U.S. 359, 363 (1952) (concluding that the right to have a jury decide factual issues of fraud is "too substantial a part of the rights accorded by [FELA] to permit it to be classified as a mere 'local rule of procedure' "); *Brown*, 338 U.S. at 299 (holding that state courts must apply the federal pleading standard in FELA cases); *White*, 238 U.S. at 511-12 (holding that the burden of proof is substantive in a FELA case). Therefore, the substantive-procedural determination cannot turn solely on whether cost doubling is a form of damages. Rather, we consider the larger context of federal precedent—particularly FELA precedent, when available—focusing on principles of uniformity between state and federal courts. *See Kinworthy*, 860 N.W.2d at 357.

*Corp. v. Gottshall*, 512 U.S. 532, 544 (1994) ("Because FELA is silent on the issue of negligent infliction of emotional distress, common-law principles must play a significant role in our decision.").

For example, in *Monessen* the issue was whether FELA preempted a state prejudgment interest rule. 486 U.S. at 334. The *Monessen* Court first examined the text of FELA and the federal interest statute, but both were silent as to prejudgment interest. *Id.* at 336. Because congressional silence alone was insufficient to manifest "an unequivocal congressional purpose" to make prejudgment interest unavailable, the *Monessen* Court considered the common law in 1908, when FELA was enacted. *Id.* at 337-38. In 1908, the common law did not allow prejudgment interest in actions for personal injury or wrongful death. *Id.* at 338. After FELA was enacted, federal courts uniformly prohibited prejudgment interest in FELA actions, and Congress never amended FELA to allow prejudgment interest. *Id.* at 338-39. Based on the historical common law, the United States Supreme Court held that prejudgment interest is not available in a FELA action. *Id.*

Similarly, FELA is silent regarding double-costs recovery. *See* 45 U.S.C. §§ 51-60. But the state of the common law when FELA was enacted indicates that Congress did not intend for plaintiffs to recover double costs. Moreover, as described below, Congress has rejected efforts to create a plaintiff's right to double costs under federal law.

Double-costs rules originated in the "offer to confess judgment" doctrine of nineteenth-century common law. Robert G. Bone, *"To Encourage Settlement": Rule 68,*

12

*Offers of Judgment, and the History of the Federal Rules of Civil Procedure*, 102 Nw. U. L. Rev. 1561, 1583-84, 1584 n.92 (2008). The doctrine's purpose was to protect defendants from overzealous plaintiffs. *See id.* at 1593-94. In 1908, only *plaintiffs*, not defendants, were taxed additional costs as a consequence for rejecting an offer to confess judgment. *See id.* at 1588-89.

It was not until the 1980s—70 years after FELA was enacted—that federal and state commentators discussed making double costs available to plaintiffs who make offers of judgment. *Id.* at 1608.[8] In 1995, the United States House of Representatives passed a bill that would have created a plaintiff's right to double-costs recovery in diversity jurisdiction cases, but the United States Senate did not act on the bill. Attorney Accountability Act of 1995, H.R. 988, 104th Cong. § 2. Thus, although Congress could have created a plaintiff's right to double-costs recovery, it did not do so. *Cf. Monessen*, 486 U.S. at 338-39 ("Congress has amended the FELA on several occasions since 1908. Yet, Congress has never attempted to amend the FELA to provide for prejudgment interest.").

When FELA was enacted, no right to double-costs recovery existed for plaintiffs. The actions of Congress since FELA's enactment buttress the conclusion that Congress

---

[8] We amended Minn. R. Civ. P. 68 in 1985 to permit plaintiffs to recover double costs. *See* Minnesota Supreme Court Advisory Committee on Civil Procedure, *Report to Minnesota Supreme Court* 47 (Sept. 14, 1984) (stating that the amendment would "make the offer of judgment procedure available to both plaintiffs and defendants in order to encourage settlement by all parties"); *see also* Minn. R. Civ. P. 68 (1986). During the same time period, a proposal to amend Federal Rule of Civil Procedure 68 to allow plaintiffs to recover double costs was advanced. But the proposed amendment to the Federal Rules was tabled in 1986. Bone, *supra*, at 1610.

did not intend to make double costs available to plaintiffs. We, therefore, conclude that federal law does not authorize the application of Rule 68.03(b)(2)'s double-costs-recovery provision in a FELA action.

IV.

Because a plaintiff's right to double-costs recovery under Minn. R. Civ. P. 68.03(b)(2) is substantive and not authorized by federal law, FELA preempts Rule 68.03(b)(2). Accordingly, BNSF may not be taxed double costs as a consequence of rejecting Boyd's settlement offer.

Reversed and remanded.

HUDSON, J., not having been a member of this court at the time of submission, took no part in the consideration or decision of this case.